## ZIMMERMAN *v*. MILLER.

1. COURTS—JURISDICTION—PLEADING—COSTS IN CIRCUIT COURT—
WHEN AWARDED DEFENDANT.

> In actions arising out of contract, jurisdiction of the court
> is determined by the amount demanded in the plaintiff's
> pleadings, and not by the sum actually recoverable or
> that found by the judge or jury on the trial; the only
> effect of failure to recover in the circuit beyond the
> amount the party could have recovered in justice's court
> being the award of costs against him.

2. TENDER—PRIVATE CHECK.

> Where defendant as agent contracted to sell plaintiff a house
> and lot "subject to owner's approval," and later notified
> plaintiff that he had been unable to secure the owner's
> consent, and sent his personal check to return the amount
> deposited, which plaintiff refused, *held*, not a legal tender.

3. CONTRACTS—CONSTRUCTION—SUBJECT TO APPROVAL.

> The plain provisions of a contract for the sale of a house
> and lot, that $50 deposited by plaintiff was but half of
> the first payment, the sale to be closed when the other
> half was paid, and "this deposit accepted subject to owner's
> approval," *held*, to leave no room for construction.

4. SAME—VALIDITY.

> Until approved in writing, a written agreement to sell real
> estate, made subject to approval, depends for its value,
> like an oral agreement to sell real estate, chiefly on the
> integrity of the owner or his agent.

5. SAME—BREACH—MEASURE OF DAMAGES.

> If the writing was a valid contract to sell, which was
> breached by defendant's refusal to proceed, plaintiff's
> measure of damages was the difference in value of the
> property at the time of the contract and its value at the
> time of the breach, and not its value "at the present time."

6. SAME—DAMAGES—EVIDENCE—COSTS.

> The only evidence of damages sustained by plaintiff being
> the $50 deposited with defendant, plaintiff was entitled
> to a judgment for said amount, with interest, but with
> costs against him.

Error to Wayne; Codd, J. Submitted April 24, 1919. (Docket No. 125.) Decided July 17, 1919.

Assumpsit by William Zimmerman against Frank P. Miller for breach of a land contract. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Proctor K. Owens,* for appellant.

*Albert McClatchey* and *Firmon Lush,* for appellee.

STEERE, J. At a time when the unearned increment of realty values in the village of Highland Park was under active exploitation, plaintiff had an affair in that line with defendant resulting in this litigation, the documentary evidence of which, shorn of defendant's advertising matter, is as follows:

"Agreement, made this 18th day of November, 1915, between Frank P. Miller, of Detroit, Michigan, representing. . . .party of the first part, and Wm. Zimmerman and wife. . . .Street 109 East Milwaukee, city of Detroit, Mich., parties of the second part:

"Witnesseth: That the party of the first part agrees to sell and convey, and the parties of the second part agree to purchase all that certain piece or parcel of land described as follows: . . . . . . 6 rooms and bath, house located on . . . . Lot No. 421 Subdivision Hamilton Park, Price $3,250.00. The terms to be $100.00 . . . . . .as first payment and the balance to be paid as follows: $30 or more per month . . . . . . interest at six (6) per cent. per annum, subject to all taxes from date hereof.

"Parties of the first part agree to furnish Abstract of title free and clear from all liens and incumbrances.

"Deposited $50.00, balance to be paid and sale to be closed on or before December 18, 1915.

"This deposit accepted subject to owner's approval.

"Remarks: House to be completed about December 18th.

"No verbal agreements shall be binding on either party hereto.

"The stipulations aforesaid are to apply to and bind the successors, heirs, executors, administrators and assigns of the respective parties.

"Witness the hands and seals of the above parties.

"WM. ZIMMERMAN    (L. S.)
"F. P. MILLER        (L. S.)

"In presence of
   "JOHN PRICE,
   "C. L. LOVEJOY,
        "Salesman."

"DETROIT, MICH., December 13th, 1915.
"MR. WILLIAM ZIMMERMAN,
   "109 Milwaukee Ave. East,
   "Detroit, Mich.

"*Dear Sir:*   We are returning herewith deposit of fifty dollars ($50) made by you, under date of November 18, 1915, on account of the proposal to purchase house being erected on lot 421, Hamilton Park, for Mr. Hullinger.

"We have been unable to secure Mr. Hullinger's consent to this sale, owing to the fact that the Highland Park school board has been contemplating the purchase of the lots in this vicinity, and it has only been definitely decided upon a few days ago that the site will include the lot upon which the proposal was made upon by you.

"This house has been removed to lot 406 of the same subdivision, across the street, but as we have no word from you that you want same under the conditions, we hasten to return the deposit as stated. Kindly look this matter over at once, and advise if it is still your desire to purchase the house on the lot mentioned.

"Regretting our inability to serve you in this matter, and with thanks for the business offered to us, we are,

                "Yours very truly,
                    "FRANK P. MILLER,
                    "Sales Department."

Zimmerman testified that he had a talk with Miller in relation to purchasing lots in Highland Park and says:

"I bought a house and lot of him. This is the contract I made. I signed it and paid $50 down."

The instrument he then identified as the contract and introduced in evidence as his muniment of title is necessarily the measure of his rights. He admittedly was never in possession of the property he claimed to have purchased, identified as that described in his contract which he says Mr. Lovejoy brought to him with an invitation to read it and request to sign it, and after he signed Lovejoy took it to Miller to sign. Of the consummation of that feature of the business he testified:

"I paid $50 cash and received the contract about a week later. After that I went out and looked at the property and I liked it."

The house which he then saw in process of construction on the lot proved somewhat ambulatory under Miller's manipulations and when Zimmerman went out to look at the property later he found, as he tells it,—

"no house there at all; it had been moved across the road. I then went to Mr. Miller's office to find out the trouble, and he said they could not—they said it was turned over to the Highland Park school board, and they had taken it and it was sold to them. * * * He offered me the same house on a lot across the street at that time and I refused to take it."

"That time" was when he called at Miller's place of business after receiving the letter of December 13. He states that on December 18, 1915, he tendered back the check which had been mailed him and says:

"When the balance was to be paid about 18 months ago I went to Mr. Miller's office and he would not accept it. I offered him $50 United States money. That completed the amount I was to pay, $100."

The case was tried June 20, 1918. "About 18 months ago" would be about a year after it was due.

His agreement provides: "The terms to be One Hundred $100.00...... as first payment. * * * Deposited $50.00, balance to be paid and sale to be closed on or before December 18, 1915."

On March 22, 1917, plaintiff commenced this action to recover damages for "nonperformance," stated by his counsel during the progress of the trial, when asked what was claimed, to be—

"the amount we should have been entitled to if the contract had been performed up to the present time. We did not break the contract. * * * This man was deceived into purchasing the property. We claim that he sustained damages which the jury can find."

It was shown that in December, 1915, Miller, who was agent for the Michelson Land & Home Company and had been selling lots for it in the Hamilton Park subdivision, assisted in negotiating a deal with the school board of Highland Park by which the latter purchased through him for a school site several lots of that subdivision, including lot 421 named in Zimmerman's contract. Miller's letter to Zimmerman indicates that "Mr. Hullinger," whose refusal to consent to Zimmerman's "proposal" is given as an excuse or justification for dropping the latter, was owner of that lot. The attorney for the school board found the legal title to lot 421 and others in that subdivision purchased by it to be in the Michelson Land & Home Company, which deeded the same to the public schools of Highland Park on December 16, 1915. The attorney who represented the school board in the purchase testified that a partially completed house was then under roof with the rough flooring in, on lot 421, of which he says,—

"Mr. Miller told me this house was being built for a man by the name of Hullinger, in Royal Oak. He said that he could get the title for me, and did get it."

On motion of defendant's counsel the trial court directed a verdict of no cause of action, telling the jury in a charge of some length the reasons for so doing. Numerous errors are assigned by plaintiff against various portions of the charge, but one of which calls for serious consideration. In concluding the charge, during which other issues involved were disposed of as questions of law, the court stated that while plaintiff would be entitled to recover in the proper tribunal the $50 paid defendant to apply on the purchase, he could do so only in a justice's court where rested exclusive original jurisdiction in all civil actions wherein the amount involved did not exceed $100.

While counsel for plaintiff claimed at one time during the trial that he was deceived into purchasing the property and his action is not planted on a breach of the contract, apparently upon some theory of fraudulent inducement to enter into the contract, his grievance as disclosed by his pleadings and proofs is that defendant would not, and after the lot was conveyed to others could not, perform the contract, while plaintiff was always ready and anxious to perform on his part. He so asserts in his declaration, which sounds in assumpsit, and in it "alleges that by reason of the nonperformance of this contract by the said defendant, he has sustained damages in the sum of twenty-five hundred dollars." The fact that he failed on the trial to prove recoverable damages exceeding $100 did not divest the court of jurisdiction to give him judgment for whatever he was able to prove. Defendant as agent for an undisclosed principal received the money from plaintiff under this contract for a specified purpose to which he did not apply it.

It was early held in this State after a full discussion of the subject that in actions arising out of contract, jurisdiction of the court is determined by the amount demanded in the plaintiff's pleadings, not by

the sum actually recoverable or that found by the
judge or jury on the trial, the only effect of failure
to recover in the circuit beyond the amount the party
could have recovered in justice's court being the award
of costs against him. *Strong* v. *Daniels,* 3 Mich. 466.
This case has been cited with approval and followed
when applicable in later decisions. *King* v. *Railroad
Co.,* 16 Mich. 132; *Inkster* v. *Carver,* 16 Mich. 484;
*Stortz* v. *Ingham Circuit Judge,* 38 Mich. 243; *Meyer*
v. *Wood,* 38 Mich. 297; *Nelson* v. *People,* 38 Mich. 618;
*Lewis* v. *Railway Co.,* 56 Mich. 638; *Berndt* v. *Ionia
Circuit Judge,* 111 Mich. 359; *Reed* v. *Overlie,* 192
Mich. 444. Defendant's claim that the $50 was ten-
dered back is not tenable. Mailing plaintiff his pri-
vate check, which was refused, did not serve as a legal
tender. Whether his check would have been good is
immaterial. Each of these parties stands strictly on
his legal rights. The court is not required in this
proceeding to pass upon the financial responsibility or
moral code of this real estate agent, nor the business
wisdom of plaintiff in accepting from him so loose and
plainly unilateral an instrument as that upon which
he relies, and must necessarily rely, for he never was
in possession of the realty to which it relates and any
oral agreements made between them in relation to it
are of no validity.

Plaintiff presumably read or heard read this paper
before he signed it, and knew what it provided. He
does not claim any misrepresentations were made to
him as to its contents at the time he signed it or be-
fore. He stated that the matter of reading it was
called to his attention by the man who brought it to
him. His only testimony as to Miller's representa-
tions before the paper was signed is:

"I had been up there prior to signing the contract
and looked at it and then talked to Mr. Miller about
it. In boosting the proposition he said that it was

nice property, it would be worth more, pretty near double the amount it was worth then, that it was near the schools and near the Ford factory, and I could get a job in the Ford factory, and all those things he told me. I relied upon his statement and representations, and a day or two after that they came down with the contract and I signed it."

While this crude writing which plaintiff accepted and signed was defendant's composition and where construction is permissible should be most strongly construed against him, its plain provision that the $50 then deposited is but half of the first payment, the sale to be closed when the other half is paid, and "This deposit accepted subject to owner's approval," leaves in that simple wording no room for construction. In its opening paragraph Miller is shown to be an agent representing an unnamed principal who never signed the agreement or approved it so far as shown. It must be admitted that other provisions are noticeably less clear and definite. It is left to construction whether Miller or the party he represented, or both of them, constitute the "party of the first part," multiplied to "parties of the first part" where last referred to; but construing it most strongly against Miller, he as party of the first part agrees to sell and convey to the parties of the second part "6 rooms and a bath," appurtenant to which it is fairly inferable are a house and designated lot which the parties had in mind and intended to include in the deal, followed by price and terms with provision for a "deposit accepted subject to the owner's approval." The writing nowhere states Miller is the owner, but on the contrary that he represents some one else, and the proof is that he was not the owner. Until approved in writing, a written agreement of this kind made subject to approval depends for its value, like an oral agreement to sell real estate, chiefly on the integrity of the owner or his agent.

But, even conceding that this writing upon which plaintiff relies did amount to a binding contract to sell which defendant has breached, entitling plaintiff to recover damages, his proposed proof upon that subject was not directed to the proper measure of damages, which the trial court explained in sustaining objections to it. The claimed breach occurred December 16, 1915, when the lot was deeded to the school board. No attempt was made to prove the difference in value of the property at the time of the contract and its value at the time of the breach. Plaintiff's counsel contended on the trial that the measure of damages was "the difference between the price at the time this property was sold and the amount of value of the property up until the close of this litigation" and directed his questions, objection to which was sustained, to the value of the property "at the present time" (June 20, 1918). There was no error in the rulings of the court in that particular.

The record contains no legal evidence of damages sustained by plaintiff beyond the deposit of $50 with defendant for which amount, with interest, he was entitled to a judgment, with costs against him.

For this error the judgment is reversed with costs to plaintiff, and a new trial granted.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.