SCHUSTERMAN *v.* EMPLOYMENT SECURITY COMMISSION.

1. CORPORATIONS—SEPARATE ENTITY.

    A corporation is a legal entity separate from its individual stock-holders.

2. UNEMPLOYMENT COMPENSATION—QUALIFYING WAGE CREDITS—SEPARATE EMPLOYING ENTITIES—SOUND BUSINESS REASON.

    There was a sound business reason for the separation of 2 corporations owning separate apartment buildings on adjoining parcels, where the owners of the common stock had an insufficient amount of capital to commence them simultaneously, it was recommended by the Federal housing administration that there be 2 separate entities and there was no plan of avoidance of contributions to the unemployment compensation fund, hence, where neither corporation, as a separate entity, was subject to the unemployment compensation act at time plaintiff sought benefits, he was not entitled thereto as there was a lack of qualifying wage credits under the act (CL 1948, § 421.-28, as amended by PA 1949, No 282; §§ 421.40, 421.41[3]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur, Corporations § 6.

[2] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 24–27.

[2] Construction and application of statutory provisions requiring filing of pay roll reports or other statistics for purposes of unemployment insurance. 174 ALR 410.

Judicial questions regarding unemployment provisions of Federal Social Security Act or State legislation adopted to set up "State plan" contemplated by that act. 100 ALR 697; 106 ALR 243; 108 ALR 613; 109 ALR 1346; 118 ALR 1220; 121 ALR 1002.

Construction and application of State unemployment compensation act as affected by terms of Federal Social Security Act or judicial or administrative rulings thereunder. 139 ALR 892.

Construction, application, and effect, with respect to social security and unemployment compensation taxes, of statutes imposing penalties for tax evasion or default. 7 ALR2d 1074.

Appeal from Wayne; Webster (Clyde I.), J.  Submitted October 10, 1952.  (Docket No. 54, Calendar No. 45,530.)  Decided April 13, 1953.

Certiorari by Louis Schusterman to review decision of appeal board of Employment Security Commission (formerly Unemployment Compensation Commission) denying compensation.  Reversed by circuit court.  Defendants Cantor and others appeal.  Reversed.

*Frederick G. Palliaer* (*Wurzer, Higgins & Starrs,* of counsel), for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for Employment Security Commission.

*M. H. Shillman,* for defendants Cantor and others.

SHARPE, J.  This is an appeal from a judgment of the circuit court of Wayne county on certiorari reversing an order of the appeal board of the Michigan unemployment compensation commission.

An agreed statement of facts includes the following:

"LaSalle Boulevard Apartments, Inc., and Fourteenth Avenue Apartments, Inc., are each Michigan corporations organized under the general corporation act to take advantages of the provisions of title 608, Federal housing act.*

"LaSalle Boulevard Apartments, Inc., was organized March 25, 1949.  Fourteenth Avenue Apartments, Inc., was organized June 6, 1949.  Except for 100 shares of preferred stock in each corporation held by the Federal housing administration as required by the Federal housing act, and the articles of

---

* 56 Stat 303 (12 USCA, § 1743).—REPORTER.

incorporation, Louis Cantor and Dorothy Cantor, his wife, are the sole stockholders in LaSalle Boulevard Apartments, Inc., and Fourteenth Avenue Apartments, Inc.

"Neither corporation, considered separately, is liable for contributions under the Michigan employment security act, since neither has the required minimum of 8 employees on the pay roll for 20 weeks in a year. The employees of both corporations, however, when considered together, exceed the statutory minimum of 8 for a period of 20 weeks during 1949.

"Cantor Construction Company is a Michigan corporation, organized June 23, 1947, doing industrial and commercial work. This company has been largely inactive since the latter part of 1948, except for maintenance work. It was liable for contributions under the Michigan employment security act during 1948 and 1949. At its request, granted by the commission April 18, 1950, the corporation liability for contributions was terminated as of January 1, 1950.

"Louis Cantor Company is a registered copartnership consisting of Louis Cantor and Dorothy Cantor, his wife. Its business was mainly land surveying. During 1947 and 1948 it was liable for contributions under the Michigan employment security act. Its request for termination of liability was granted by the commission as of April 1, 1949.

"Louis Schusterman, plaintiff herein, worked for LaSalle Boulevard Apartments, Inc., from July 22 through August 25, 1949, and for Fourteenth Avenue Apartments, Inc., from October 3 through November 17, 1949. Employment with LaSalle Boulevard Apartments, Inc., was terminated August 25th by reason of completion of work. Schusterman immediately procured other employment. Employment with Fourteenth Avenue Apartments, Inc., was terminated November 17th, by reason of completion of work. Schusterman was unable to find employment and registered with the employment security commission. This litigation is an outgrowth of such registration.

"The mimeographed forms of articles of incorporation used by both LaSalle Boulevard Apartments, Inc., and Fourteenth Avenue Apartments, Inc., were furnished by the Federal housing administration. As originally executed and accepted by the Michigan corporation and securities commission, the articles for LaSalle Boulevard Apartments, Inc., contained the following provisions:

"Article 2(d) provides that 'The purpose for which the corporation is formed [is] to apply for and obtain or cause to be obtained from the Federal housing commissioner a contract or contracts of mortgage insurance pursuant to the provisions of the national housing act as amended, covering bonds, notes, and other evidences of indebtedness issued by this corporation and any indenture of mortgage or deed of trust securing the same. So long as any property of this corporation is encumbered by a mortgage or deed of trust insured by the Federal housing commissioner it shall engage in no business other than the construction and operation of a rental housing project or projects.'

"Article 3(e) provides: 'In the event of any default by the corporation, as hereinafter defined, and during the period of such default, the holders of the preferred stock, voting as a class, shall be entitled to remove all existing directors of the corporation, and to elect new directors in their stead: Provided however, that 1 of said directors shall be the owner or holder of 1 or more shares of common stock. When such default or defaults shall have been cured, the right to elect directors shall again vest in the holders of the common stock.'

"Article 4(s) (d) provides: 'Anything to the contrary herein notwithstanding, no dividends shall be paid upon any of the capital stock of the corporation (except with the consent of the holders of a majority of the shares of each class of stock then outstanding) until all amortization payments due under each and every mortgage insured by the Federal housing commissioner have been paid, and until a

separate reserve fund for replacements is first established and maintained for each project hereinafter in this paragraph mentioned, by the allocation to such reserve fund in a separate account with the mortgagee thereof (or in the case of a deed of trust with the beneficiary) or in a safe and responsible depository designated by the mortgagee commencing on the date of the first payment towards amortization of the principal of each and every mortgage insured by the commissioner unless a later date is approved in writing by the holders of the preferred stock, of and [an?] amount equal to

| | |
|---|---|
| $124.32 | for Project FHA No 044–42049 |
| $..... | for Project FHA No ......... |
| $..... | for Project FHA No ......... |
| $..... | for Project FHA No ......... |
| $..... | for Project FHA No ......... |
| $..... | for Project FHA No ......... |

and a like amount monthly thereafter. Such funds whether in the form of cash deposits or invested in obligations of, or fully guaranteed as to principal and interest by the United States of America shall at all times be under the control of the respective mortgagees. Disbursements from each fund, whether for the purpose of effecting replacements of structural elements, furnishings and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the holders of the preferred stock.'

"Article 8 provides: 'The corporation shall not, without prior approval, of the holders of a majority of the shares of preferred stock, given either in writing or by vote at a meeting of the preferred stockholders called for that purpose * * * (e) Consolidate or merge the corporation into or with any other corporation.'

"Article 9 provides: '(A) The happening of any of the following events shall constitute a default within the meaning of that word as used in these articles: (1) The failure of the corporation to have

dismissed within 30 days after commencement, any receivership, bankruptcy, or other form of liquidation instituted by or against the corporation; (2) the failure of the corporation to pay the principal, interest, or any other payment due on any note, bond or other obligation executed by it, as called for by the terms of such instrument; (3) the failure of the corporation to establish and maintain any reserve fund for replacements provided for in article 4, § (d) hereof or the use of such fund except as permitted in said section; (4) the failure of the corporation, continuing for a period of 15 days, to perform any of the covenants, conditions or provisions required by it to be performed by this certificate, the bylaws of the corporation, the mortgage, or any contract to which the corporation and the commissioner shall be parties, or fail to carry out in full the terms of any agreement whereby the loan covered by the insured mortgage is to be advanced or the project is to be constructed and operated.'

"The articles of Fourteenth Avenue Apartments, Inc., are identical except that article 4(2) (d) did not originally appear in the same form as did the corresponding article 4(2) (d) in the articles of incorporation of LaSalle Boulevard Apartments, Inc. The verbiage of article 4(2) (d) of the articles of Fourteenth Avenue Apartments, Inc., which is precisely the same as article 4(2) (d) of the articles of incorporation of LaSalle Boulevard Apartments, Inc., as amended, reads:

" 'Anything to the contrary herein notwithstanding, no dividends shall be paid upon any of the capital stock of the corporation (except with the consent of the holders of a majority of the shares of each class of stock then outstanding) until all amortization payments due under the mortgage insured by the Federal housing commissioner have been paid, and until a reserve fund for replacements is first established and maintained by the allocation to such reserve fund in a separate account with the mortgagee (or in the case of a deed of trust with the beneficiary)

or in a safe and responsible depository designated by the mortgagee commencing on the date of the first payment towards amortization of the principal of the mortgage insured by the commissioner unless a later date is approved in writing by the holders of the preferred stock, of an amount equal to $124.32 and a like amount monthly thereafter. Such fund whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal and interest by the United States of America shall at all times be under the control of the mortgagee.

" 'Disbursements from such fund, whether for the purpose of effecting replacements of structural elements, furnishings and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the holders of the preferred stock.'

"The LaSalle Boulevard apartments are on the east side of, and face LaSalle boulevard. They occupy a strip of land bounded on the north by Burlingame avenue and on the south by an alley running parallel thereto, and on the east by apartments owned and operated by the Fourteenth Avenue Apartments, Inc., which face Fourteenth avenue. There is approximately 100 feet, including parking area, dividing the 2 apartments.

"Mr. Cantor testified that the 2 projects were designed as 2 separate entities on the recommendation of the Federal housing administration, and that architects involved in these projects are pretty much directed by the land planning of the Federal housing which works with the architects and helps them lay out the projects so it will conform to their desires. The same plan was used for both the apartments but with 2 different sets of blue prints.

"Mr. Cantor, in behalf of the corporations, testified that he sublet the major portion of the construction work on both projects to subcontractors. These subcontractors employed their own workers and are not involved in this litigation. Mr. Cantor, however, did not sublet the finished carpentry work be-

cause he felt he would get a better job by hiring the carpenters himself. This was performed by a crew of carpenters under the immediate directions of the foreman selected by Mr. Cantor.

"Work on the LaSalle Boulevard apartments was commenced early in May, 1949. This group was completed and ready for occupancy on or about September 15, 1949. Work on the Fourteenth Avenue apartments was commenced in June, 1949. It was completed and ready for occupancy on or about November 1, 1949.

"When working on the LaSalle group, plaintiff and the other carpenters were paid their wages each week by check issued by the LaSalle Boulevard Apartments, Inc., and signed by Louis Cantor as president. While engaged on work on the Fourteenth Avenue apartments, their wages were paid each week by check issued by the Fourteenth Avenue Apartments, Inc., and signed by Louis Cantor as president. Withholding statements were issued by the corporations separately.

"On occasion, after the first projects were completed and the tenants had started to move in, one or more of the carpenters engaged in work on the Fourteenth Avenue apartments performed some task on the LaSalle group. This involved a correction of a sticky door or cabinet or some other item of minor nature. In these instances the individual or individuals involved continued to receive their wage from the Fourteenth Avenue apartments. Mr. Cantor testified that he did not authorize any commingling of employees.

"Mr. Cantor, corroborated by his certified public accountant, testified that he did not have sufficient funds to start up both corporations at the same time, and that the Federal housing administration recommended that he do it as he did. He testified that when he formed the 2 corporations the last of his thoughts was the avoidance of contributions to the Michigan unemployment compensation fund. Mortgages in the amount of $226,800 were obtained

through the Federal housing commissioner for each of the corporations and these mortgages are still valid and subsisting.

"The field adviser for the Michigan unemployment compensation commission testified that it was his understanding that any building project under title 608 with FHA aid must be set up as separate corporation, and that he has run across this situation before.

"The certified public accountant for the defendant corporations testified that the accounts of the corporations are kept separately, there are separate bank accounts, separate statements issued on each apartment, and that in setting up the books he did not have in mind the avoidance of unemployment compensation. He further testified that there was a sound business reason for the separation of the 2 corporations because, in the first place, Mr. Cantor did not have sufficient capital to start both projects, and secondly, it would be inadvisable to do so because the Federal government has priority, and in case of default, management of the corporation would go to the government. If one building would be paying for itself and the other would not, and both buildings were part of the same corporation, the corporation could lose both buildings, whereas, if each building were separately incorporated the corporation could lose only the nonpaying building. He further testified that he takes care of 60 builders in the city of Detroit and there is seldom more than one building started in a corporation under title 608."

On September 13, 1950, the referee filed an opinion which contains the following:

"Section 41 (3),* the affiliation clause in the act, in its present form is inapplicable here. The referee finds that there was a sound business reason for separating the 2 corporations herein involved from each other and from the other activities of Louis

* CL 1948, § 421.41 (Stat Ann 1950 Rev § 17.543).—REPORTER.

Cantor. The referee finds that tax under the Michigan unemployment compensation act is avoided, but that there is no tax evasion or evidence of fraud. Where there is no attempt at tax evasion or fraud, the referee does not believe the courts will disregard corporate entities. If this were one individual, Louis Cantor, engaging in various employment activities, the referee would not hesitate to apply section 40 of the act,* but finds that herein, with these corporations, section 40 is not applicable.   *   *   *

"Claimant's employment during the period involved herein in 1949 was for LaSalle Boulevard Apartments and Fourteenth Avenue Apartments, and since neither of such employing units was an employer within the meaning of section 41 of the act of 1949, his claim based on earnings from these 2 employing units was properly denied because of lack of qualifying wage credits."

Upon appeal, the appeal board rendered a decision which contains the following:

"A review of the record satisfies us that the findings of fact as set forth by the referee in his decision are supported by the evidence and therefore we adopt said findings as our own.

"The primary issue involved is whether or not the claim filed by the claimant herein was properly denied on the grounds that claimant had insufficient wage credits to meet the eligibility conditions of section 28 (e–1) of the act.† This issue is in turn regulated by the outcome of 2 secondary issues, namely, whether or not during the calendar year 1949, the employing units known as the LaSalle Boulevard Apartments, Inc., and the Fourteenth Avenue Apartments, Inc., constituted a single employing unit under the provisions of section 40 of the act and if not, whether said employing units constituted an employer

---

* CL 1948, § 421.40 (Stat Ann 1950 Rev § 17.542).—Reporter.
† CL 1948, § 421.28, as amended by PA 1949, No 282 (Stat Ann 1950 Rev § 17.530).—Reporter.

within the meaning of the affiliate clause of section 41 (3) of the act.

"The referee before whom this matter was tried has made a careful analysis of all the pertinent matters therein, both as to matters of fact and questions of law. It is our opinion that the decision therein rendered is fully supported by both the facts and the law.

"The decision of the referee is hereby affirmed."

The trial court reversed the decision of the appeal board and in an opinion stated:

"I think it is true, as stated by counsel, that there is always a sound business reason for the existence of 2 or more affiliated corporations in the place and stead of 1, but management and organization are not factors with which the amendment is concerned. They have no bearing, application or effect on the employing relation.

"As stated by counsel in their brief—They are entirely foreign to the crucial factor with which we are dealing—unemployment.

"Consideration for the affairs of management and organization can not be assigned as a sound business reason for the existence of 2 or more employing units in the place and stead of 1, nor should these considerations be deemed the controlling factor upon which the right of an individual to receive the benefits of the act rests.

"It seems to be clear from the record that the 2 employing units involved here are engaged in a common enterprise, the construction and operation of a single housing project. Their status is not that of employing units engaged in the same or associated line of business. It is that of 2 employing units engaged in the same identical business.

"It follows, therefore, that the defendants have failed to show a sound business reason for their separation as contemplated by this act, especially having reference now to section 41 (3).

"The decision of the appeal board of the Michigan

unemployment compensation commission is reversed and the writ may issue."

On October 17, 1951, a judgment was entered in conformity with the trial court's opinion. Defendants appeal and urge that the court erred in holding that consideration for the affairs of management and organization cannot be assigned as a sound business reason for the existence of 2 or more employing units in the place and stead of 1.

The question involved in this case requires an interpretation of CL 1948, § 421.1 *et seq.*, as amended by PA 1949, No 282 (Stat Ann 1950 Rev § 17.501 *et seq.*).

That part of the act involved is CL 1948, § 421.-41(3) (Stat Ann 1950 Rev § 17.543), and reads as follows:

"Any employing unit which was formerly an employer under paragraph (1) of this section, or has acquired any part of the business of an employer or employing unit which is or was formerly an employer under paragraph (1) of this section, and which, together with 1 or more other employing units engaged in the same or an associated line of business, is owned or controlled (by a legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls 1 or more other employing units engaged in the same or an associated line of business, and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this section: Provided, that this subsection shall not apply in cases where it can be shown that there is a sound business reason, other than avoidance of contributions, for the separation of such employing units."

The gist of the commission's claim is that the 2 companies, although separate and distinct in every respect, are only 1 employing unit under the employ-

ment security act. In *Ned's Auto Supply Co.* v. *Unemployment Compensation Commission*, 313 Mich 66, four brothers and a sister comprised the members of a partnership. They dissolved the partnership and organized 2 corporations for the purpose of conducting the wholesale and retail phases of the same business. The 2 companies sought to combine its experience record with that of its predecessor partnership for the purpose of determining its rate of contribution. We there said:

"It is clear that the 2 corporations could not qualify as a single employing unit under the provisions of said section 22 (a) (1), (2), and (3), unless their corporate entities were disregarded. Plaintiffs argue that because the 5 partners continued as owners of the corporate stock of the 2 corporations and as directors and officers thereof, the corporate entities should be disregarded and they should be considered as a single employing unit. We cannot agree with this argument, because plaintiff corporations are 2 separate and distinct legal entities and, therefore, 2 separate employers. We recognize that the courts have often looked through the veil of corporate structure in order to prevent fraud or injustice. *Old Ben Coal Co.* v. *Universal Coal Co.*, 248 Mich 486; *People, ex rel. Attorney General*, v. *Michigan Bell Telephone Co.*, 246 Mich 198 (PUR 1929B, 455). However, no question of fraud is involved in the present case, and we find no occasion to disregard the corporate entities of the 2 plaintiffs. A single partnership had been split into 2 separate corporations, and under section 22* quoted above they could not be combined as a 'single' successor employing unit."

In *Employment Security Commission* v. *Crane*, 334 Mich 411, a partnership of 2 brothers conducted an automobile sales agency. They also formed an-

* PA 1936 (Ex Sess), No 1, § 22, as amended by PA 1941, No 364 (Stat Ann 1941 Cum Supp § 17.524).—Reporter.

other partnership and conducted a business of selling tractors and implements from another manufacturer. The businesses were physically separated, as well as the banking and bookkeeping. The question which arose in this case was whether the 2 partnerships were one employing unit.

We there said:

"However, we do not find in the employment security act itself any requirement that 2 separate and distinct copartnerships operating as in the case at bar must be construed as a single employing unit. Appellant's only basis for claiming such a conclusion must be found solely in the unity of the partners in both copartnerships. There is no such 'unity of enterprise' here as to bring the instant case under *American Screw Products Co.* v. *Michigan Unemployment Compensation Commission,* 311 Mich 440 (159 ALR 1195). Here, the enterprises operated by the 2 partnerships were fully separate and apart, and conducted as such. Furthermore, the 'unity of enterprise' basis announced in the *American Screw Products Case, supra,* would not afford any relief to the appellant here. The appellee would not suffer hardship under the unity of enterprise premise, any more than under the legal entity theory of partnerships. * * *

"In the instant case, the 2 Johnsons had a sound business reason for the complete separation of the Johnson Tractor & Implement Sales partnership from the operation of the Ford agency partnership. The Johnson Tractor & Implement Sales agency operated under a franchise from its supplier prohibiting it from engaging in any other business. Section 41, *supra,* recognizes that legal entities are not to be disregarded unless it appears that there is no sound business reason for separation other than merely to avoid contributions under the act. The reason for the separation here has not been challenged."

It is a well-established fact that a corporation is a separate entity, separate from its individual stock-

holders. In the case at bar, the 2 projects were designed as 2 separate entities on the recommendation of the Federal housing administration. There was no plan of avoidance of contributions to the Michigan unemployment compensation fund. The accounts and records of the companies were kept separately.

We are in accord with appellants' claim that under the circumstances of this case, there was a sound business reason for the separation of the 2 companies. The 2 companies do not constitute a single employing unit under the unemployment compensation act. Each was a separate and distinct unit.

The judgment is reversed, with costs to appellants.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSH-NELL, BOYLES, and REID, JJ., concurred.