SOLOMAN v WESTERN HILLS DEVELOPMENT COMPANY
(AFTER REMAND)

Docket No. 47913. Submitted February 4, 1981, at Lansing.—Decided
October 7, 1981.

Emily J. Soloman and George C. Soloman brought an action
against the Western Hills Development Company, Claude O.
Darby, Jr., Ivan A. MacArthur, Darby & Son, Inc., Claude O.
Darby, Sr., Dorothy J. MacArthur, Robert G. Banwell, and
Sheila T. Banwell, seeking specific performance of an agree-
ment to sell certain real property, or, in the alternative, for
damages for breach of that contract. The defendants moved for
summary judgment on the ground that the plaintiffs failed to
state a claim upon which relief could be granted. The plaintiffs
appealed in the Court of Appeals, which reversed the decision
of the trial court and remanded the case for trial. 88 Mich App
254 (1979). Following trial, the trial court found the sales
contract to be valid, that the contract had been breached, that
specific performance was impossible because of a sale of the
property to good-faith purchasers, and awarded Emily Soloman
damages against Western and Ivan A. MacArthur and Claude
O. Darby, Jr., in their capacities as Western stockholders. A
judgment of no cause of action was entered against George C.
Soloman in favor of all the defendants. Western, Claude O.
Darby, Jr., and Ivan A. MacArthur appeal. *Held:*

1. The trial court erred in disregarding the corporate entity
to find defendants MacArthur and Claude O. Darby, Jr., liable
for damages. No finding was made that an improper use of the
corporate form was involved. No inequity to Emily J. Soloman
is involved in limiting liability for damages to Western. Its
merger with Elms Road Development Company renders that
company liable for any of Western's liabilities.

2. The trial court properly held that damages were to be

REFERENCE FOR POINTS IN HEADNOTES

[1] 18 Am Jur 2d, Corporations §§ 13-16.
[2] 19 Am Jur 2d, Corporations § 1508.
[3, 5] 77 Am Jur 2d, Vendor and Purchaser §§ 519, 522.
[4] 77 Am Jur 2d, Vendor and Purchaser §§ 526, 529.
[6] 22 Am Jur 2d, Damages § 296.
   29 Am Jur 2d, Evidence §§ 140, 142.

determined so as to give Emily J. Soloman the benefit of the bargain.

3. The trial court's determination of the amount of damages was based on insufficient proof, requiring vacation of the award and remand for a new trial limited to a determination of the amount of damages.

Affirmed in part, reversed in part, and remanded.

BEASLEY, J., concurred in part and dissented in part. He would hold that the reversal of the judgment against Western's stockholders is proper. However, he would affirm the judgment against Western, holding that sufficient evidence was presented to support the findings of the trial court as to the amount of damages. He would affirm in part and reverse in part.

OPINION OF THE COURT

1. CORPORATIONS — CORPORATE ENTITY — STOCKHOLDERS.

Generally, the law treats a corporation as an entity entirely separate from its stockholders, even where all its stock is owned by one person; however, a court's treatment of a corporate entity should rest on notions of equity based on the facts of the case, and the corporate entity may be ignored where the community of interest between the corporation and its stockholders is so great that to serve justice they should be considered one and the same, or where the corporate entity is used to defeat public confidence, avoid legal obligations, justify a wrong, protect fraud, defend crime, or to subvert the ends of justice.

2. CORPORATIONS — MERGERS AND CONSOLIDATIONS — LIABILITIES — STATUTES.

A new or surviving corporation, following a merger or consolidation, is liable for all the liabilities and obligations of each of the corporations merged or consolidated (MCL 450.1722[2]; MSA 21.200[722][2]).

3. DAMAGES — CONTRACTS — BREACH — BENEFIT OF THE BARGAIN — RESCISSION.

Generally, the measure of damages for a seller's breach of a contract is the benefit of the bargain; however, in cases involving the breach of a contract for the sale of land a buyer is not entitled to the benefit of the bargain unless the seller acted in bad faith but is entitled only to the amount which would be reasonable on rescission, normally the money already paid, plus interest and expenses.

4. DAMAGES — REAL PROPERTY — CONTRACTS — BREACH.

A seller of real property, seized of title, who, notwithstanding a contract to sell, nevertheless refuses to convey or conveys to a third party acts in bad faith, and damages to the buyer may be measured by the benefit of the bargain.

5. DAMAGES — REAL PROPERTY — CONTRACTS — BREACH — BENEFIT OF THE BARGAIN.

Damages for failure to convey real property based on the benefit of the bargain generally are measured by calculating the difference between the agreed-upon sales price and the value of the property at the time of the breach, but the damages need not be shown to a mathematical certainty.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY BEASLEY, J.

6. DAMAGES — CONTRACTS — BREACH — APPEAL.

*Evidence to support a finding of damages in an action for breach of a contract to sell real property so as to give the injured party the benefit of the bargain need not be overwhelming to withstand a challenge on appeal.*

*Sanford Kesten,* for plaintiff.

*Neithercut, Klapp, Shegos & Dillard,* for defendants.

Before: DANHOF, C.J., and R. M. MAHER and BEASLEY, JJ.

PER CURIAM. Defendants Western Hills Development Company, Claude O. Darby, Jr., and Ivan A. MacArthur appeal by right the judgment of the trial court, entered following a bench trial, awarding plaintiff Emily J. Soloman damages in the amount of $4,100 for breach of a contract to sell land.

On October 15, 1969, Emily J. Soloman entered into a purchase agreement with Western Hills Development Company (Western) for the sale of lot #141 in the proposed Western Hills Subdivision No. 5 located in Genesee County. The agreement stated that the purchase was to be consummated

by delivery of a deed in exchange for the purchase price of $8,000 "when the plat is recorded". Mrs. Soloman paid a deposit of $100 when executing this agreement.

Western was incorporated and owned by two entities. Ivan A. MacArthur owned 50 percent of the stock, and the remaining 50 percent was owned by the Genesee Investment Corporation, of which Claude O. Darby, Jr., was a shareholder. Darby served as president of Western but was also a broker for Darby & Son, Inc. Darby & Son, Inc., was engaged in the real estate business and handled the sale to Emily Soloman. Gil V. Sabuco, an employee of Darby & Son, Inc., obtained the purchase agreement and testified that Mrs. Soloman was informed that the unplatted land was owned by Western. Claude O. Darby, Jr., signed the purchase agreement on behalf of Western, but did not indicate his agency status.

In June of 1972, Western decided not to proceed with development of the proposed plat. No formal meeting was held, and the decision to abandon the project was made by Darby and Ed Neithercut, another corporate officer. Western notified Darby & Sons, Inc., and efforts were made to return Mrs. Soloman's $100 deposit. On June 29, 1972, Darby & Son, Inc., executed a check to Mrs. Soloman and mailed it to her husband, plaintiff George Soloman. Both plaintiffs testified that they never received the check.

On April 11, 1974, the tract of land comprising the proposed subdivision was conveyed to defendants Ivan MacArthur, Dorothy MacArthur, Robert Banwell, and Sheila Banwell for $55,000. As noted above, Ivan MacArthur was a 50 percent shareholder in Western. MacArthur testified that he "pretty much" authorized Darby to represent

his interests in the corporation and paid the $55,-
000 purchase price at Darby's direction. Mac-
Arthur and Robert Banwell recorded a plat of the
subdivision on December 18, 1974, and the land
was eventually subdivided. The lot previously sold
by Western to Mrs. Soloman was sold to a good-
faith purchaser, and a house was constructed on it.
MacArthur testified that he had no knowledge of
any claims held by plaintiffs at the time he pur-
chased the land. Sometime after the land was sold
to the MacArthurs and the Banwells, Western
merged with another corporation, the Elms Road
Development Company, and ceased to exist as a
separate corporate entity.

After the land was sold to the MacArthurs and
the Banwells, efforts were again made to return
Mrs. Soloman's $100 deposit. In June of 1974,
Sabuco went to plaintiffs' restaurant and left them
a check for the deposit. Plaintiffs indicated that
Sabuco tendered a check to them but that they
insisted on performance of the agreement. In any
event, it is undisputed that the check was never
returned or cashed.

On October 14, 1975, plaintiffs filed suit against
defendants, seeking specific performance of the
purchase agreement or, in the alternative, dam-
ages for breach of contract. Defendants initially
moved for summary judgment pursuant to GCR
1963, 117.2(1) on the ground that plaintiffs had
failed to state a claim upon which relief could be
granted. The trial judge granted defendants' mo-
tion and ruled that the purchase agreement was
not an enforceable contract because it did not
specify a time for performance. On appeal, this
Court reversed and remanded, holding that the
parties had entered into a valid contract requiring
the seller to record the plat within a reasonable

time. *Soloman v Western Hills Development Co,*
88 Mich App 254; 276 NW2d 577 (1979).

A bench trial was conducted on remand at
which the trial court found a valid contract be-
tween plaintiff Emily Soloman and defendant
Western. The trial court further found that the
contract was breached in April of 1974, when the
still unplatted land, containing the land described
in the agreement with Emily Soloman, was sold to
the MacArthurs and the Banwells. Specific perfor-
mance of the agreement was held not possible
since the land since had been resold to a good-faith
purchaser, so the trial court entered a judgment
for damages in favor of Emily Soloman against
Western. Judgment also was entered against de-
fendants Ivan A. MacArthur and Claude O. Darby,
Jr., in their capacities as shareholders in Western.
A judgment of no cause of action was entered
against plaintiff George C. Soloman in favor of all
defendants.

On appeal, the individual defendants argue that
they should not be held personally liable and that
the trial court erred in disregarding Western's
corporate form. This Court has recently summa-
rized the circumstances under which the corporate
form may be disregarded:

"Generally, the law treats a corporation as an en-
tirely separate entity from its stockholders, even where
one person owns all of the corporation's stock. *Bourne v
Muskegon Circuit Judge,* 327 Mich 175, 191; 41 NW2d
515 (1950). Complete identity of interest between sole
shareholder and corporation may lead courts to treat
them as one for certain purposes. *Williams v American
Title Ins Co,* 83 Mich App 686; 269 NW2d 481 (1978).
Where the corporation is a mere agent or instrumental-
ity of its shareholders or a device to avoid legal obliga-
tions, the corporate entity may be ignored. *People ex
rel Attorney General v Michigan Bell Telephone Co,*

246 Mich 198, 205; 224 NW 438 (1929). A court may look through the veil of corporate structure to avoid fraud or injustice. *Schusterman v Employment Security Comm,* 336 Mich 246; 57 NW2d 869 (1953). The community of interest between corporation and shareholders may be so great that, to meet the purposes of justice, they should be considered as one and the same. *L A Walden & Co v Consolidated Underwriters,* 316 Mich 341, 346; 25 NW2d 248 (1946). When the notion of a corporation as a legal entity is used to defeat public convenience, justify a wrong, protect fraud or defend crime, that notion must be set aside and the corporation treated as the individuals who own it. *Paul v University Motor Sales Co,* 283 Mich 587, 602; 278 NW 714 (1938). The fiction of a corporate entity different from the stockholders themselves was introduced for convenience and to serve the ends of justice, but when it is invoked to subvert the ends of justice it should be and is disregarded by the courts. *Paul, supra.* A court's treatment of a corporate entity clearly rests on notions of equity, whether it is an action at law or at equity. Each case involving disregard of the corporate entity rests on its own special facts. *Brown Brothers Equipment Co v State Highway Comm,* 51 Mich App 448; 215 NW2d 591 (1974)." *Kline v Kline,* 104 Mich App 700, 702-703; 305 NW2d 297 (1981).

See also *United Armenian Brethren Evangelical Church v Kazanjian,* 322 Mich 651; 34 NW2d 510 (1948), *Gledhill v Fisher & Co,* 272 Mich 353; 262 NW 371 (1935).

In the instant case the trial court noted that Western regularly ignored corporate formalities and that the line between th corporation and at least some of the shareholders was "very blurry". The record supports this finding. Disregard of corporate formalities alone is not, however, sufficient to justify piercing. In addition, fraud, illegality, or injustice need be shown as set forth in *Kline.* The trial court in the instant case specifically held on several occasions that no fraud or

illegality had been shown in the individual defendants' use of Western's corporate form. Instead, the trial court held that Western's merger with Elms Road Development Company and its current nonexistence as a separate entity required a finding of individual liability in order to "do equity":

"So the Court is satisfied that the corporate veil can be pierced to hold Claude O. Darby, Jr., and Ivan A. MacArthur, individually, because of that failure to follow those lines, and also for the Court to be able to do equity in a situation where there's really some question of whether Western Hills Development Company now has any value left to it. And the Court deriving in part from what Mr. Darby has said about Western Hills has now merged into Elms Road Development, or some name that is now another corporation. So the Court has no problem in order to do equity to pierce the corporate veil."

In this regard we hold that the trial court erred. Although it is clear that the corporate form may be disregarded to prevent injustice and to reach an equitable result, we believe that the injustice sought to be prevented must in some manner relate to a misuse of the corporate form short of fraud or illegality. If the rule were otherwise, an equal injustice or inequity could result. The instant case provides an example. The trial court determined that Mrs. Soloman was entitled to damages from Western. Because Western no longer existed, the trial court held MacArthur and Darby liable, apparently believing that the judgment could not be enforced against the corporate defendant, Western. And yet the trial court also found that MacArthur and Darby did not misuse Western's corporate form in their dealings with Mrs. Soloman. Accordingly, the trial court's finding of individual liability in the absence of any

improper use of the corporate form is inequitable to MacArthur and Darby. Under the trial court's reasoning, individual shareholders always may be held liable for the acts of their corporation whenever that corporation has merged with another corporation and ceased to exist, even where there has been no improper use of the corporate form and even where the merger has not been found to have taken place in order to avoid the corporate liability. We do not believe that such a rule is either just or equitable. Furthermore, the injustice which the trial court believed would result to Mrs. Soloman should the judgment be limited to the corporation does not necessarily exist. The Legislature has provided that when a merger takes place the surviving corporation is liable on claims against the merged corporation. MCL 450.1722(2); MSA 21.200(722)(2). We also note that Elms Road Development Company had notice of the instant action since its resident agent is apparently Claude O. Darby, Jr., one of the individual defendants and a former shareholder of Western. The trial court's judgment against Ivan A. MacArthur and Claude O. Darby, Jr., is reversed.

The appellants raise additional issues regarding damages which we will address in terms of defendant Western. The general rule of damages for a seller's breach of contract is to give to the buyer the benefit of the bargain. See *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789, 810; 286 NW2d 34 (1979), *lv den* 408 Mich 869 (1980), *Tel-Ex Plaza, Inc v Hardees Restaurants, Inc,* 76 Mich App 131, 134; 255 NW2d 794 (1977), *lv den* 402 Mich 832 (1977), *Allen v Michigan Bell Telephone Co,* 61 Mich App 62, 68; 232 NW2d 302 (1975), *lv den* 395 Mich 793 (1975). This rule has been modified in some jurisdictions in cases involving the

breach of a contract for the sale of land. Under the so-called "English rule", based on the case of *Flureau v Thornhill,* 2 Wm Bl 1078; 96 Eng Rep 635 (1776), the buyer is not entitled to the benefit of the bargain unless the seller has acted in bad faith, but is instead limited to the amount which would be recoverable on rescission, normally the money already paid plus interest and expenses. McCormick, Damages, § 178, pp 684-686. The English rule was recognized in Michigan in *Hammond v Hannin,* 21 Mich 374, 384-390; 4 Am Rep 490 (1870).[1]

The early cases generally involved the breach of a contract for the sale of land due to the inability of the seller to convey good title. The question of the seller's good or bad faith centered on whether he or she was aware of defects in the title at the time the contract was made. It was also held, however, that a seller acts in "bad faith" sufficient to justify loss of bargain damages when, having title, the seller nevertheless refuses to convey, or when the seller is unable to convey due to a voluntary act such as conveying to a third party. *Allen v Atkinson,* 21 Mich 351, 363 (1870). See *Haukland v Muirhead,* 233 Mich 390, 396; 206 NW 549 (1925), *Hamburger v Berman,* 203 Mich 78, 84; 168 NW 925 (1918), *Hammond, supra,* 387. This is the situation in the instant case and the trial court was correct in determining damages on the basis of plaintiff's loss of bargain.

In order to give the buyer the benefit of the bargain damages are usually measured by the difference between the agreed price and the value

---

[1] More recent cases have not discussed the matter in as great detail as *Hammond. Hammond,* however, to our knowledge has not been specifically overruled. *Hammond* was challenged by the defendant in *Way v Root,* 174 Mich 418, 428-429; 140 NW 577 (1913), but the Court found it unnecessary to rule on the question.

of the land at the time of the breach. Dobbs, Remedies, §§ 12.7-12.8, pp 832-836, *Craine v Miller,* 240 Mich 357, 359; 215 NW 355 (1927), *Zimmerman v Miller,* 206 Mich 599, 607; 173 NW 364 (1919), *Port Investment Co v Anderson,* 23 Mich App 103, 104; 178 NW2d 157 (1970). During trial it was undisputed that this was the proper measure of damages. In active dispute, however, was the question of whether plaintiffs had proven any damages under this standard. At the close of plaintiffs' proofs, defendants moved for dismissal on this ground, and the motion was denied.

Resolution of this issue depends on whether the value of the land at the time of the breach is determined as platted or unplatted. At the time of the breach the land was not in fact platted. Based on the price paid by the MacArthurs and the Banwells for the raw acreage, the defendants placed the value of the lot covered in the contract with Mrs. Soloman at $900. Since the contract price for this lot was $8,000, defendants argued that there was no damage. Plaintiffs responded that the contract price referred to a lot in a platted subdivision and that the value of the land in question at the time of the breach, therefore, must be determined as if it had been platted. The trial court held that the value of the land at the time of the breach had to be determined as though platted and we agree. As noted above, damages for breach of this contract are designed to give Mrs. Soloman the benefit of her bargain. She bargained for a platted lot and agreed to pay $8,000 for such a lot. Even though the land was not yet platted at the time of the breach, the value of the land at that time must be determined as though it were platted in order to give Mrs. Soloman the benefit of her bargain, if any, placing her in as good a

position as she would have been had the contract been performed. Accepting defendants' position would defeat the purpose of the rule of damages applicable to this case. Testimony was presented during trial sufficient to show that the value of the land, as platted, was greater than the $8,000 contract price. Accordingly, Mrs. Soloman adequately showed that she had been damaged as a result of the breach, and the trial court did not err in denying the motion to dismiss.

Defendants also argued, however, that there was insufficient evidence to prove the value of the lot, as platted, at the time of the breach. While we hold that there was sufficient testimony to establish that the land was worth more than the $8,000 contract price, we agree that the actual value of the lot, as platted, at the time of the breach, was not sufficiently established. The trial court found that the value of the lot was $12,000 based on the testimony of defendant Claude O. Darby, Jr. Darby had testified that, so far as he remembered, similar lots had sold for between $10,000 and $12,000. He specifically stated that he did not remember, however, when these similar lots were sold for such prices. Damages need not be shown to a mathematical certainty. See *Device Trading, Ltd v The Viking Corp,* 105 Mich App 517, 526; 307 NW2d 362 (1981). On the other hand, we are of the opinion that the evidence in the instant case was not sufficient to justify a finding that the value of the land at the time of the breach was $12,000. Under these circumstances, where there is sufficient proof of damage but insufficient proof of the actual amount of that damage, we believe the best course is to remand for a new trial limited to the issue of damages. See *Lawton v Gorman Furniture Corp,* 90 Mich App 258, 269; 282 NW2d 797 (1979).

We do not mean to suggest that the damages in this case will ever be able to be determined to a mathematical certainty. Nor do we suggest that the value of the land at the time of breach cannot be found to be $12,000. More specific proofs may show that the value of the land was indeed $12,000 or more or less than that amount. We do believe, however, that the damages can be ascertained with a greater degree of certainty than presently exists.

The judgment against defendants Ivan A. MacArthur and Claude O. Darby, Jr., is reversed. The judgment against defendant Western is affirmed, but the award of damages is vacated and this cause is remanded to the trial court for a new trial limited to a determination of the amount of damages consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BEASLEY, J. *(concurring in part; dissenting in part).* I join with the majority in reversing the judgment against defendants Ivan A. MacArthur and Claude O. Darby, Jr.

I would, however, affirm the judgment against defendant Western Hills Development Company. While the evidence certainly was not overwhelming, I would hold that there was enough evidence to support the trial judge's findings in this nonjury trial.