GREENSTINE v. SRERE.

1. LANDLORD AND TENANT—BREACH OF AN EXECUTORY CONTRACT FOR A LEASE—PLEADING—DAMAGES—BURDEN OF PROOF.
   In an action by the owner of a building for damages for the breach of an executory contract to make a lease indorsed by surety, plaintiff, by his affirmative case, assumed the burden of proving that he had made reasonable effort to rent the premises to other parties for the purpose of minimizing his loss.

2. SAME—PLEADING—CONTRADICTORY COUNTS—ELECTION OF COUNT.
   Where plaintiff's declaration contained two counts, one on the theory of defendant's violation of an executory contract for a lease, and the other on the conflicting theory of a violation of an executed lease, and the proofs sustained the former, the trial court was not in error, on request of defendant and without objection from plaintiff, in submitting the case to the jury under the first count, and instructing the jury that the undisputed proofs showed that defendant had violated the same.

3. SAME—EVIDENCE—DAMAGES—QUESTION FOR JURY.

　　Contradictory testimony as to plaintiff's efforts to rent the premises to other parties rendered the question one of fact for the jury.

4. SAME—EVIDENCE—TRIAL—DIRECTED VERDICT.

　　Where the undisputed evidence showed that defendant had breached the executory contract, and that plaintiff had held the premises for him for at least 30 days, the trial court should have instructed the jury that plaintiff was entitled to a verdict in his favor for at least nominal damages, and the judgment entered on the verdict of no cause of action is therefore reversed.

Error to Wayne; Williams (Benjamin), J., presiding. Submitted June 14, 1922. (Docket No. 61.) Decided March 22, 1923. Rehearing denied June 21, 1923.

Assumpsit by David E. Greenstine against Abram Srere for breach of an executory contract to make a lease. Judgment for defendant. Plaintiff brings error. Reversed.

*James H. Pound*, for appellant.

*Friedman & Meyers*, for appellee.

STEERE, J. This is an action in assumpsit commenced by summons on May 22, 1918. Plaintiff declared upon the following instrument claimed to have been executed in duplicate by the parties charging its breach by defendant and resulting damages in the sum of $6,000:

"Memorandum of agreement, made and entered into, this 15th day of June, 1917, by and between David E. Greenstine, of the city of Detroit, county of Wayne, and State of Michigan, and Abe Srere, of the same place, Witnesseth, that, Whereas, the said David E. Greenstine, is the owner of the premises described as No. 475 Hastings street, Detroit, Michigan. And, whereas, the said Abe Srere is desirous of leasing, and does hereby lease, the said premises.

Therefore, in consideration of the sum of forty-eight hundred ($4,800.00) dollars. To be paid to the said David E. Greenstine, in monthly installments of, two hundred ($200.00) dollars each, payable in advance. The said David E. Greenstine, on his part, agrees to install all the necessary light, and the other electric fixtures. And also to put the premises in suitable shape, and condition, for the occupancy, of the party of the second part.

"It is agreed, that as soon as the said David E. Greenstine puts the inside of the said premises in such condition, the said parties hereto agree to enter into a written lease, (using Richmond & Backus standard form, No. 10) according to the terms and conditions in this agreement. It is understood, that the rent for the said premises, will begin at the time the said David E. Greenstine presents the said premises in the condition herein set forth. And the said premises herein described includes only the store and dwelling, and enough space for a suitable passage way in rear. It is understood that the said lease shall be indorsed, by the Srere Brothers, to insure the faithful performance of the same.

"GEORGE RIEMAN.     "DAVID E. GREENSTINE.
                 "ABE SRERE."

Defendant filed a plea of the general issue. The case was tried in May, 1920. Upon the trial it appeared that the copy delivered to defendant was the same as that declared upon with the exception that the word "electric," before the word "fixtures" in the sentence "The said David E. Greenstine, on his part, agrees to install all the necessary light, and the other *electric* fixtures," was omitted from it. After execution and delivery of the two instruments in duplicate, except as above stated, plaintiff made certain repairs on the premises and installed certain electric lighting fixtures. On July 10, 1917, he notified defendant by letter that the premises were ready for occupation, inclosing a form of lease in duplicate signed by himself which he requested defendant to sign and return one of them indorsed by the sureties named in the

previous agreement, stating that on receipt of same with *pro rata* rent he would deliver possession on the date of the lease, which was July 12, 1917, and giving notice he would hold defendant liable for damages caused by his failure to comply with its terms. On July 13, 1917, defendant acknowledged receipt of this letter, objected to the form of lease proposed on the ground it did not comply with their original agreement in the particular that it limited the use of the premises to store and dwelling house purposes, stating the agreement was defendant could inspect the premises and he would not sign any lease until he could do so, concluding, "I am therefore returning you the leases until I am given the privilege of ascertaining whether the necessary work has been done to the premises." On July 17, 1917, defendant acknowledged a letter from plaintiff of the 16th, disagreeing with the latter's construction of their preliminary agreement as to the kind of business which could be carried on in the premises, and referring to certain matters in relation to which they had understanding, asserted that he was anxious to obtain the premises and asked plaintiff to leave the keys with the clerk of the Pontchartrain hotel. On July 18, 1917, defendant again wrote plaintiff that he had examined the premises, claimed that certain shelving which had been agreed to was not yet put in, objected to certain wiring as inadequate, and stated he was ready to take over the keys when such work had been done according to their agreement, but concluding: "I am unable to get Srere Brothers to go as sureties on the lease, but trust this will not interfere with my obtaining said lease." On July 30, 1917, defendant again wrote plaintiff acknowledging receipt of a letter of July 27, 1917, which advised him possession would not be given unless Srere Brothers would become sureties on the lease, referred to some previous talks and

correspondence between them and said that owing to the fact he could not get Srere Brothers to go on the lease as sureties he was compelled to drop all arrangements made towards taking over the premises, concluding: "I presume there is no use to carry this correspondence any further as each letter seems to be but a repetition of the other and I am therefore dropping the entire matter."

At the trial plaintiff testified that upon defendant's default he put the premises in the hands of an agent for the purpose of obtaining another tenant therefor, but was unable to secure any one until the expiration of the time specified in the instrument sued upon; that he received no rent from anybody during that time and claimed for rent at the rate and during the whole time mentioned in the agreement quoted, amounting to $4,800, as well as other damages he had suffered in that connection, and introduced the testimony of various witnesses showing that renting conditions during the period covered by the agreement sued on were bad, rendering it impossible for him to obtain a tenant.     Defendant introduced testimony tending to show that plaintiff refused various parties who desired to rent the premises, telling some of them that the place was already rented to defendant whom he was holding liable, and renting to anybody else would interfere with his claim for rent and damages against defendant.     The case was submitted by the court to the jury against plaintiff's motion for a directed verdict, resulting in a verdict of no cause of action in favor of defendant.     Two motions for a new trial were made, argued and denied without written opinion by the court.

Plaintiff assigns 27 alleged errors by the trial court during the progress of the trial in the admission and rejection of testimony, the charge, and refusal to grant a new trial.     Some of plaintiff's assignments

of error are not argued and others are not such as to call for review. Of the 89 pages in plaintiff's brief 68 are devoted to what is entitled "Statement of Facts" and "a sharp condensation of the testimony from plaintiff's view-point." Twenty-one witnesses were sworn. Where their testimony was in conflict the truth upon the issue so made was for the jury. Most of the witnesses were examined and cross-examined exhaustively.

At the inception of his charge the trial court said to the jury as follows:

"I charge you that under the evidence as presented and the law applicable thereto, that the defendant violated or breached his agreement entered into with the plaintiff wherein he agreed to accept a lease of the premises owned by plaintiff at No. 475 Hastings street, and to secure the indorsement of Srere Bros. thereon as surety for the faithful performance thereof. I charge you that the defendant had no legal right to refuse to accept the lease which was tendered him by plaintiff."

Counsel for plaintiff assigns error upon this instruction because the court limited the case to the view that it was a suit to recover damages for not entering into a lease, and so limiting the case was "misled or confused" into giving a charge which in effect—

"is the old time Roman argument, well known as far back as the Greeks and Romans, that by subdividing and splitting substance may be divided, so that, argumentatively, property may be dissolved and right overpowered;" appealing to the court to notice "that it is reasoning in an imperfect circle;" and that "this charge is incompatible with itself."

As indicative of the imperfect circle and incompatibility of the charge, counsel quotes the following instruction found further along in the charge after in substance instructing the jury at length as to plaintiff's duty to minimize his damages if reasonably

possible by securing other acceptable and responsible tenants during the life of the lease,

—"and as a matter of fact, plaintiff did not secure any sum whatsoever on account of the occupancy of the premises, No. 475 Hastings street. Your verdict, therefore, must be for plaintiff in the full amount claimed by him unless you find that plaintiff had the opportunity to rent the premises for legitimate purposes to suitable persons who were able financially to pay the rent for the period or part of the period the premises were vacant."

Whether plaintiff made reasonable effort to rent the premises is the paramount issue of fact in the case, to which the conflicting testimony of witnesses for the respective parties was mainly devoted.

Upon that issue plaintiff assumed the burden of proof in making out his affirmative case. He testified in part:

"I immediately after he (defendant) declared he would not accept the premises, within 24 hours after that, put it into the hands of a prominent real estate agent. He put his signs up through the whole building.

"Q. Did you have yourself any application for the tenancy?

"A. No."

He also introduced the testimony of his claimed agent and various other witnesses that there was a slump in real estate and rents about that time and no tenants were available. Against this defendant introduced the testimony of various witnesses to the contrary, who testified that business men were looking for available premises in different lines of business and various persons, who were unobjectionable and responsible, made application to plaintiff but he refused to rent on the ground that the premises were leased and he was holding the party to whom he had rented them for the agreed rental, over which he anticipated a lawsuit which might be detrimentally

affected if he rented to others. Upon this issue the court charged the jury:

"If you find that plaintiff arbitrarily, without any good reason therefor, refused to rent the premises to any particular tenant, you will diminish the claim of damages to the plaintiff by such an amount as you find from the evidence the plaintiff could have obtained for prospective tenants, if any, who wanted the place and to whom said plaintiff arbitrarily and without good reason refused to rent the same."

The court also charged the jury that the burden of proof was upon plaintiff to establish all necessary facts to substantiate his claim by a preponderance or greater weight of the evidence and if he failed to sustain that burden the jury should find for defendant.

Plaintiff's counsel urges as error that this "places the burden of proof to outweigh defendant's proof, which is surely not the law of Michigan." As we understand this objection, in its application to the principal issue involved here, it means that the instruction erroneously put upon plaintiff the burden of proving that he made a reasonable effort to minimize damages by renting the premises during the period defendant had agreed to take it as a tenant. No decisions in this State or elsewhere are cited upon that question by counsel, though conflicting authorities can be found as to it where the relation of landlord and tenant had been established and the tenant who had been given possession by the landlord afterwards abandoned the premises and the landlord sued for rent.

That question is not, however, open under the facts in this case. There was no abandonment of the premises by defendant here. Plaintiff was never out of possession of the premises. He refused to accept defendant as his tenant or give him possession, because he breached the contract and would not sign

the tendered lease nor furnish the security provided for in their memorandum of agreement.

After quoting the memorandum of agreement plaintiff in the first count of his declaration avers full performance, tender and demand on his part, refusal to perform and default by defendant, saying further:

"And that this plaintiff avers that he has tried earnestly to rent the said premises which were fitted up by him, plaintiff, at a great expense, for the special use and benefit of the defendant, so as to reduce the loss. But this plaintiff avers that he has not succeeded in so doing. And plaintiff avers that he has suffered great damages by reason of the said written contract to lease and let the said premises as stipulated not being executed, together with the suretyship hereinbefore stipulated for."

Defendant pleaded the general issue without any special notice, putting plaintiff to his proofs, and the latter assumed the burden of proving the averments in his declaration, amongst which was the assertion that he had tried earnestly to rent said premises so as to minimize his damages.

Plaintiff's declaration also contained a count for rent, alleging that on June 15, 1917, defendant executed a written lease of the premises, and referring to the quoted contract of agreement as such. The first count was upon the theory of defendant's violation of an executory contract for a lease, while the latter was on the conflicting theory of a violation of an executed lease. The proofs sustained the former. When defendant's counsel moved that plaintiff be required to elect between the two theories or that the court take from the jury plaintiff's claim for rent under an alleged lease the court inquired of plaintiff's counsel if there was any objection, and none being made, submitted the case to the jury under the first count on the theory of an executory contract to make a lease indorsed by surety for defendant's faithful

222—Mich.—3.

performance along the lines of the memorandum of agreement, and instructed the jury that the undisputed proofs showed defendant had violated the same.

We find no error in this ruling. Plaintiff treated defendant's refusal from the beginning as a breach of the executory contract, as he had a right to do, refused him the premises and kept possession, notifying him in writing that he would hold him "liable for any loss or damages that I may suffer through your delay or otherwise in carrying into effect the said agreement of June 15, 1917." This notice was given on July 10, 1917, in connection with notice that the premises were ready for occupancy and tender of a lease for defendant and his stipulated surety to sign. Correspondence between them followed in which defendant sought to secure the premises without giving the agreed security, to which plaintiff did not consent, and on July 30, 1917, defendant finally wrote plaintiff admitting his default and notifying him that he therefore dropped "the entire matter."

Recognizing his duty to minimize damages plaintiff testified that within 24 hours after receiving such notice he took steps to secure tenants for the property and made all reasonable effort to that end, in which he was unsuccessful during the nearly two remaining years contemplated in their memorandum of agreement. This the jury did not believe in the face of the testimony defendant produced, and rendered a verdict of no cause of action.

The verdict cannot, however, be sustained. In any aspect of the case plaintiff was, under the undisputed evidence, entitled to nominal damages. There was a valid contract which the court rightly instructed the jury defendant was shown to have breached without any legal justification. This, as matter of law, entitled plaintiff to a verdict in his favor for at least nominal damages and the court should have so in-

structed the jury.    It is undisputed that for 20 days after receiving notice from plaintiff the premises were ready for his occupancy on his complying with the terms of their memorandum of agreement, defendant corresponded with plaintiff on the subject, claiming to have planned and indicating a desire to occupy the premises, making overtures for securing them. While this was in progress and until his breach of the contract by final refusal, plaintiff was under no obligation to seek other tenants to minimize damages.

The judgment must therefore be reversed, with costs to plaintiff, and a new trial granted.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK,. BIRD, SHARPE, and MOORE, JJ., concurred.