TEL-EX PLAZA, INC. v HARDEES RESTAURANTS, INC.

1. CONTRACTS—DAMAGES—LANDLORD AND TENANT—AGREEMENTS TO
     LEASE—BREACH OF AGREEMENT.

   The general measure of damages applied where an agreement to
   lease is breached by the prospective lessee is the excess of the
   agreed rent over the rental value of the property or the rent
   the plaintiff could obtain for the property through reasonable
   diligence.

2. CONTRACTS—BREACH OF CONTRACT—DAMAGES—MITIGATION OF
     DAMAGES—BENEFITS FROM BREACH.

   The goal in awarding damages for breach of contract is to place
   the innocent party in a position equivalent to that which he
   would have attained had the contract been performed; however,
   the injured party must make every reasonable effort to mini-
   mize the loss suffered, and the damages must be reduced by the
   value of any benefits accruing to the plaintiff as a consequence
   of the breach.

3. CONTRACTS—BREACH OF CONTRACT—DAMAGES—AVOIDABLE CONSE-
     QUENCES.

   A plaintiff in an action for breach of contract, under the avoida-
   ble consequences doctrine, is not allowed to recover for losses
   he could have avoided by reasonable effort or expenditure; the
   plaintiff has a duty to do whatever may reasonably be done to
   minimize his loss.

4. DAMAGES—CONTRACTS—BREACH OF CONTRACT—BENEFITS FROM
     BREACH—MONEY SAVED—MEASURE OF VALUE.

   Money saved by a plaintiff because of a defendant's breach of an
   agreement to enter a lease must be included within the benefits
   derived from the breach and must be appreciated to account for
   its value to the plaintiff when ascertaining damages; a reasona-
   ble measure of appreciation of value is the statutory legal rate
   of interest of 5 percent per annum (MCLA 438.31; MSA
   19.15[1]).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3] 49 Am Jur 2d, Landlord and Tenant §§ 23, 24.
[4] 49 Am Jur 2d, Landlord and Tenant § 22 et seq.

Appeal from Oakland, Robert L. Templin, J.
Submitted April 12, 1977, at Detroit. (Docket Nos.
27866, 27867.) Decided June 7, 1977. Leave to
appeal applied for.

Complaint by Tel-Ex Plaza, Inc., and American
Commercial-Industrial Realty Company against
Hardees Restaurants, Inc., for damages for breach
of an agreement to enter into a lease. The com-
plaint of American Commercial was dismissed at
the beginning of trial. Judgment for plaintiff Tel-
Ex, finding that a breach had occurred, but award-
ing no damages. Tel-Ex and Hardees both appeal.
Affirmed.

*Sommers, Schwartz, Silver, Schwartz & Tyler,
P. C.* (by *A. Albert Sugar),* for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *Edward
F. Kickham),* for defendant.

Before: R. B. BURNS, P. J., and T. M. BURNS and
D. C. RILEY, JJ.

T. M. BURNS, J. Tel-Ex sought damages for Har-
dees' breach of an agreement to enter into a build-
to-suit lease. The trial court found that Hardees
breached the lease but that Tel-Ex had failed to
prove any damages. Costs were awarded to neither
party. Both parties appeal, each raising one issue.

On October 24, 1971, the parties entered into an
agreement to enter into a build-to-suit lease in-
volving a parcel of land located at 10 Mile Road
and Telegraph Road in Southfield. Basically, Tel-
Ex agreed to construct a $120,000 building and
Hardees agreed to pay $26,500 per year for 20
years. Hardees was permitted to erect a free-stand-

ing sign, subject to governmental requirements. An adjoining parcel of land had been leased by Tel-Ex to Ponderosa Steak House.

In November, 1971, Ponderosa cancelled its lease with Tel-Ex. Tel-Ex leased the land to Elias Brothers Big Boy Restaurant.

In April, 1972, Hardees cancelled the lease agreement because it had been refused a sign permit. Hardees was also concerned about the change in neighbors from a remote competitor to a direct competitor.

Tel-Ex eventually leased the Hardees parcel to Elias Brothers for use as a Roy Rogers Restaurant. Under the Roy Rogers lease, Big Boy erected its own building and agreed to pay $18,000 per year for 15 years.

The only issue of substance is whether Tel-Ex has suffered damages as a result of Hardees' breach of the agreement.

Tel-Ex computes its damages by taking the total rent payable under the Hardees lease, deducting the cost of the proposed building and deducting the gross rentals due under the Roy Rogers lease:

| | |
|---|---|
| Hardees Rent ($26,500 × 20 years) | $530,000 |
| Cost of Proposed Building | − 120,000 |
| | $410,000 |
| Rent Due from Roy Rogers | − 270,000 |
| ($18,000 × 15 years) | |
| | |
| Damages | $140,000 |

In offering the argument that Tel-Ex suffered no damages, Hardees utilized two different measures of damages. Under the first theory Tel-Ex's damages of $140,000 is completely offset by the return on Tel-Ex's investment of the $120,000 savings in

low-risk, high grade bonds.[1] Hardees' second theory was based on expert testimony to the effect that the Roy Rogers lease had a greater market value than the Hardees lease. The trial court accepted Hardees' theories.

Although incorrect measures of damages were employed below, we agree that Tel-Ex has suffered no damages.

The general measure of damages applied where an agreement to lease is breached by the prospective lessee is the excess of the agreed rent over the rental value of the property, or the rent plaintiff could obtain for the property through reasonable diligence.[2] Application of this measure alone would easily resolve the dispute in the instant case. However, factors other than mere agreed rent and rental value are involved and formulation of a fair remedy requires consideration of broader concepts.

The goal in awarding damages for breach of contract is to give the innocent party the benefit of his bargain—to place him in a position equivalent to that which he would have attained had the contract been performed. The injured party, however, must make every reasonable effort to minimize the loss suffered,[3] and the damages must be reduced by any benefits accruing to the plaintiff as a consequence of the breach.[4] In other words, under the avoidable consequences doctrine, the plaintiff is not allowed to recover for losses he could have avoided by reasonable effort or expendi-

[1] For example, an investment of $120,000 in bonds paying 7.45 percent would yield $178,800 over 20 years.

[2] *See* 49 Am Jur 2d, Landlord & Tenant, § 23, p 66, 51C CJS, Landlord & Tenant, § 201, pp 516–517.

[3] *Maraldo Asphalt Paving, Inc v Harry D Osgood Co, Inc,* 53 Mich App 324, 326; 220 NW2d 50 (1974), *Greenstine v Srere,* 222 Mich 25; 192 NW 676 (1923).

[4] *Goodwin, Inc v Orson E Coe Pontiac, Inc (Supplemental Opinion),* 62 Mich App 405, 413; 233 NW2d 598 (1975).

ture.[5] He has a duty to do whatever may reasonably be done to minimize his loss. Closely related to the avoidable consequences rule is the requirement that any benefit to the plaintiff arising from or as a result of the breach must reduce the damages otherwise payable.

Applying the above rules to the facts before us, the agreed rent was $26,500 for 20 years or $530,-000. The rental value of the property without improvements (presumably established by the parties as the rent payable under the Roy Rogers lease) was $18,000 for 15 years or $360,000 over 20 years. The excess of agreed rent over rental value is $170,000. Had the terms of the two leases been identical and without other consequences of significance, Tel-Ex's damages would be $170,000. We must, however, account for such differences and compare Tel-Ex's financial positions under the two leases.

Roughly, under the Hardees lease, Tel-Ex would receive $530,000 in exchange for the lease of the property and the construction of a building costing at least $120,000. At the expiration of the lease the building was to belong to Tel-Ex. Under the Roy Rogers lease, Tel-Ex received a total of $270,-000. The tenant was required to erect a building at its own expense and at the expiration of the lease the building was to belong to Tel-Ex.

In reducing the $170,000 damages by savings made due to the breach and the value of benefits derived from the breach, there is no argument that the saving of the $120,000 building must be included. This reduces the damages to $50,000. Not only has Tel-Ex saved $120,000, moreover, it has received the value of $120,000, which rested in a checking account at the time of trial. Thus, an-

---

[5] *See* Dobbs, Remedies, § 3.7, p 186.

other benefit to Tel-Ex resulting from the breach is the value of the $120,000 savings, not just the savings alone. We do not agree with Hardees that Tel-Ex should be credited with the potential return on investment of the fund in some low-risk venture. Tel-Ex has no duty to risk its money in an effort to minimize its loss. We do, however, recognize the inherent earning power of money[6] and deem it proper to appreciate the $120,000 figure to account for its value to Tel-Ex. We adopt as a reasonable measure of that value the statutory, legal rate of interest of 5 percent per annum.[7] Reducing the $50,000 damages by the simple interest on $120,000 at 5 percent over a 20 year period ($120,000), we find that Tel-Ex has suffered no loss. We thus find, as did the trial court, that no damages were shown.

On cross-appeal Hardees argues that the trial court erred in not awarding costs to it as the prevailing party. GCR 1963, 526.1. We find no abuse of discretion or violation of the court rule in the decision of the trial court refusing to award costs.

Affirmed. No costs.

---

[6] *Freeman v Lanning Corp,* 61 Mich App 527, 529; 233 NW2d 68 (1975).

[7] MCLA 438.31; MSA 19.15(1).