# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE M. CLARKE, INC.,

      Plaintiff/Counter-Defendant-
      Appellee,

v

KIM S. DRAEGER,

      Defendant-Appellant,

and

KD EQUIPMENT LEASING, INC., and AIC,
INC.,

      Defendants/Counter-
      Plaintiffs/Third-Party Plaintiffs-
      Appellants,

and

GUARANTEE COMPANY OF NORTH
AMERICA USA and XL REINSURANCE
AMERICA, INC.,

      Third-Party Defendants-Appellees.

UNPUBLISHED
March 20, 2018

No. 336481
Ingham Circuit Court
LC No. 08-000227-CZ

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

      In this contractor-subcontractor dispute, defendant Kim Draeger, and two corporations he controls, KD Equipment Leasing, Inc., and AIC, Inc.,[1] appeal as of right the trial court's

---

[1] Because of the substantial identity between the individual and corporate defendants, and the dismissal from the case of the third-party defendants, we emulate the trial court's practice and use the singular term "defendant" to refer collectively to the defendants-appellants.

-1-

judgment, on remand from this Court, awarding damages to plaintiff. We affirm in part, vacate in part, and remand for further proceedings.

## I. FACTS

This case returns to this Court after an earlier decision remanded the case for further proceedings. *Lawrence M Clarke, Inc v Draeger*, unpublished per curiam opinion of the Court of Appeals, issued January 15, 2015 (Docket No. 316194) (*"Draeger I"*). This Court's prior opinion contains the following statement of facts:

> Plaintiff was the general contractor for construction of a portion of a sanitary sewer system in Billings Township. Defendant had earlier encouraged plaintiff to bid on the project, and provided plaintiff with a unit-price proposal covering all the projected work. Plaintiff accepted the proposal and, after increasing the prices by 12 percent for its own profit, submitted it as its bid. Initially plaintiff had expected defendant, as its subcontractor, to provide all the materials and do all the work, with plaintiff contributing only some general supervision.

> Defendant arranged with two subcontractors of its own to work on the project. The parties entered into a written subcontract for work to be performed by defendant in two sections of the project. Defendant and its subcontractors worked on other sections as well, but no additional subcontracts were executed. Plaintiff itself tended to some sections as well, in order to fulfill its obligations to the municipality under the general contract.

> But, as the trial court summarized, "the project did not begin, progress, or end in a perfect world." According to plaintiff's witnesses, defendant and its subcontractors provided less than perfect, competent, or complete work.

> *   *   *

> Plaintiff commenced action in 2008, setting forth several theories of recovery, including breach of contract and unjust enrichment. Defendants counterclaimed, alleging breach of contract and, alternatively, unjust enrichment, and initiated a third-party action for payment bond against plaintiff's two sureties. The trial court summarized the evidence concerning deficiencies in defendant's performance on the project, held that the individual defendant should be personally responsible for the corporate defendants' liabilities in the matter, and awarded plaintiff over $900,000 in damages, costs, and interest. The court concluded that the question of the existence of attendant contracts, and of performance under them, was "somewhat problematic," and elected to decide the case under the theory of quantum meruit. [*Draeger I*, p 2.]

This Court concluded that the trial court erred by (1) resolving the case through application of the doctrine of quantum meruit, or unjust enrichment, where the court acknowledged that a written contract covered at least part of the activities at issue, (2) determining what defendant was entitled to collect on the basis of pay estimates without

-2-

reference to any purported final measurements, and (3) "holding defendant responsible for the full amounts of payment bond claims that plaintiff in fact settled for lesser amounts," but that defendant failed to show that the court otherwise miscalculated damages, or erred in deciding to pierce the corporate veil. *Id.*, p 12.

On remand, the trial court reviewed the testimony and exhibits from the lengthy bench trial, and entertained additional oral and written arguments from the parties. The court recited that this Court called for a determination of what aspects of the parties' relationship actually came under contract and for reevaluation of the evidence under contract law where applicable, and for use of final measurements in calculating damages by consulting Change Order 4 or better documentation for that purpose. The court further noted that this Court held that the trial court erroneously awarded plaintiff "back charges in connection with bond claims in amounts greater than what plaintiff actually paid."

The trial court offered findings in connection with contract law, with no mention of quantum meruit or unjust enrichment. The court stated that recalculating damages under the rubric of contract law instead of quantum meruit did not eliminate the problem that only "in a perfect world damages caused by a party's breach of the contract could be mathematically and precisely calculated," thus underscoring the principle, as reiterated by this Court, that "[w]e do not, in the assessment of damages require a mathematical precision in situations of injury where, from the very nature of the circumstances, precision is unattainable," and instead, "[w]e do the best we can with what we have." *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 111; 535 NW2d 529 (1995) (quotation marks and citations omitted). On remand, the trial court concluded that plaintiff was entitled to a judgment of $696,960.99, plus statutory interest and costs.

On appeal, defendant argues that the trial court failed to follow this Court's instructions on remand in connection with identifying final measurements, and factoring bond claims into back charges, and asks that the case again be remanded for further proceedings, this time before a different judge.

## II. REMAND ORDER

Whether a tribunal complied with a remand order presents a question of law subject to review de novo. *Kalamazoo v Dep't of Corrections (After Remand)*, 229 Mich App 132, 134-135; 580 NW2d 475 (1998).

### A. FINAL MEASUREMENTS

An issue in the prior appeal involved the trial court's decision to measure the work defendant completed by consulting periodic pay estimates as opposed to any documentation purporting to indicate final measurements. This Court noted that the subject construction project was conducted by way of unit price contracts, and also that plaintiff's vice president testified that the pay estimates were in fact set forth with real care, elaborating that "[e]verybody pulled the tape measure when we had an inspector handy," but admitting that the engineers' final measurement was apt to differ somewhat from the total of the pay estimates and in that event payment would properly reflect the final measurement. This Court further summarized the issue as follows:

Article 10 of the subcontract executed for two sections of the project covers payment. Section 10.2 calls for "[p]rogress payments, less retainage" for work "satisfactorily performed, no later than seven (7) days after receipt by [plaintiff] of payment from Billings Township for Subcontract Work," then adds, "Final payment of the balance due shall be made to Subcontractor no later than seven (7) days after receipt by [plaintiff] of final payment from Billings Township for subcontract Work." This provision clearly contemplates a series of payments that are not deemed to reflect all payment due until a final payment from the municipality allows such a reckoning.

The trial court looked to the several pay estimates as reflecting how the parties managed the progress payments. Plaintiff suggests that the trial court properly looked no further to determine how much defendant had earned, but defendant insists that the court should have consulted change estimate 4, which sets forth the final balancing in relation to plaintiff's contract with the municipality. Plaintiff argues that defendant is not entitled to claim any benefits from change order 4, on the ground that defendants were not parties to the contract under which it came into being. The trial court apparently agreed with defendant, however, in regarding change order 4 as offering a basis for adjusting earlier estimates to reflect actual work accomplished, but stated that it "declines to make any adjustment to the amount due [plaintiff] based on change order no. 4, on the basis the evidence does not establish which party may have been at fault for construction delays that apparently led to the assessment of liquidated damages."

The latter declaration is problematic. Actual work completed, as determined by final measurements, is a matter apart from liquidated damages resulting from construction delays. Any difficulties in determining responsibility for such delays still leaves in plain view change order 4's detailed listing of work done, adjustments made, and amounts due and owing. Further, to the extent that plaintiff wished that any adjustments in payments to defendant take into account responsibility for liquidated damages resulting from delays, plaintiff bore the burden of proving defendant's liability in the matter. If indeed the trial court was not satisfied that the evidence preponderated in plaintiff's favor in this regard, the court should simply have declined to adjust what change order 4 otherwise suggested was owed to defendant.

. . . [T]he trial court should have consulted available final measurements in calculating the parties outstanding obligations. We instruct the trial court on remand to consult change order 4 for this purpose, or some other documentation as is determined, or agreed, to reflect final measurements. [*Draeger I*, pp 7-8.]

On remand, the trial court again consulted the pay estimates, to the exclusion of Change Order 4 or any other documentation promising more accurate final measurements, with the following explanation:

In this court's opinion, the critical question to be resolved before it calculates damages is the amount used for the starting point. In this court's opinion, the amount utilized for a starting point cannot be precisely determined. While the pay estimates and/or the quantities described in change order no. 4 produce an exact, though different, amount due under the contract, that amount is only accurate if the court is able to find that defendant satisfactorily completed all the restoration work, testing and warranty or repair work included in its unit pricing.

Evidence indicated the engineers "shifted' quantities from one section of the project to another for their own convenience, not necessarily because mistakes had been made in the measurements prepared for purposes of the pay estimates.

[Plaintiff's] on-the-job foreman also testified members of AIC's crews would routinely take materials [plaintiff] had ordered for installation in those sections for which [plaintiff] had assumed responsibility.

According to [the evidence], about half of [defendant's] initial bid would have been allocated to pricing "baked in" for the restoration, testing and repair work.

According to [the evidence], the final measurements are "about the same" as the measurements made during the course of construction.

Again, this court's finding, based on all the evidence, is that when [defendant] was paid in accordance with the pay estimates as the project progressed, he was paid for the installation of the pipe together with all the other restoration and testing and repair responsibilities he had contracted to perform.

According to the project engineer, a disinterested witness, [defendant] had completed no more than 20 percent and perhaps as little as 10 percent of the restoration work in the areas in which he had worked.

The trial court thus eschewed Change Order 4 in the first instance because of a concern regarding liquidated damages, which this Court deemed unsatisfactory, then did so on remand on the ground that Change Order 4 might reflect distortions resulting from the engineers' or workers' disinclination to ensure that all work or materials invested in a given section were accurately so reported.

Plaintiff points to testimony from the township's project engineer indicating that such liberties were taken. Defendant, in disputing the trial court's conclusion in this regard, asserts that the project engineer spoke to only a single instance of a quantity shift, involving "25 feet of pipe." However, our review of the record reveals only one instance where the project engineer used the figure "25 feet," and there that witness was offering a hypothetical situation to illustrate a common practice. As plaintiff points out, that witness earlier made clear that liberties were taken in the attribution of quantities of work or materials as a matter of record-keeping

convenience. For these reasons, the trial court did not clearly err in determining that Change Order 4 was not a reliable indicator of final measurements.

As noted, this Court suggested consulting Change Order 4 or other documentation determined to be a reliable indicator of final measurements. The trial court in fact presented its reasons for relying again on the periodic pay estimates, pointing out that the testimony indicated that they should be fairly accurate, and suggesting that no better indicator of final measurements was available. In arguing otherwise, defendant suggests that an alternative to Change Order 4 for documentation of final measurements was "the as-built plans," which took into account "GPS measurements" taken "[a]fter substantial completion." However, defendant neither shows that such as-built plans were suggested to the trial court as a source for final measures, nor explains on appeal how GPS measurements would have assisted in avoiding the problem of shifting quantities.

Because the trial court on remand acknowledged this Court's directions, and well explained why, under contract law, it viewed Change Order 4 as a poor reflection of final measures and considered the periodic pay estimates as the best available source of such measures, the court's decision to rely again on the latter instead of the former comported with this Court's remand order.

Defendant additionally argues that the trial court erred in concluding that defendant completed only 15 percent of the restoration work for which it was responsible. Defendant admits that the township's project manager testified that defendant performed only that much of the restoration work in its sections of the project, and argues that the project manager's "one sentence" to that effect "is contrary to the voluminous documentary record" as defendant interprets it. However, defendant cites no authority for the proposition that a voluminous documentary record necessarily trumps a sentence of testimony. We remain guided by the well-established rule according to which conflicts in the evidence and the credibility of witnesses are matters for the fact-finder to resolve. *Dawe v Dr Reuven Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010). Therefore, we reject defendant's claim of error with respect to this issue.

## B. BOND CLAIMS

The trial court acknowledged that this Court held that it erroneously awarded plaintiff "back charges in connection with bond claims in amounts greater than what plaintiff actually paid." On remand, however, the court repeated, and compounded, that error.

A party injured by another's failure to perform under a contract "is not entitled to be placed in a better position than he would have been had the contract not been broken." *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 150-151; 314 NW2d 453 (1981). "The injured party . . . however, must make every reasonable effort to minimize the loss suffered . . . ." *Tel-Ex Plaza, Inc v Hardees Restaurants, Inc*, 76 Mich App 131, 134; 255 NW2d 794 (1977). Accordingly, when awarding damages, "deduction of any saving to the injured party must be made." *Goodwin, Inc v Orson E Coe Pontiac, Inc (Supplemental Opinion)*, 62 Mich App 405, 413; 233 NW2d 598 (1975).

Defendant conceded below that as the relationship with plaintiff broke down and AIC ceased working on the project, plaintiff attended to some responsibilities that had originally been AIC's. Defendant recognized some of plaintiff's back charges as legitimate from the beginning, and has declined to challenge others as determined by the trial court. But defendants challenged other back charges plaintiff claimed as unsupported, inflated, or duplicative.

This Court, in its earlier opinion, rejected most, but not all, of defendant's challenges concerning back charges, stating:

> The exception is the trial court's decision to hold defendant responsible for the full amounts of certain of defendant's creditor's payment bond claims, instead of for the lesser amounts for which plaintiff settled those claims. In holding defendant to the full amount, the trial court stated, "It is the court's view that [defendant] should not benefit from plaintiff's successful efforts to compromise amounts claimed to be owed by [defendant] and for which the creditors of [defendant] asserted bond claims." Defendant's objection to this reasoning has merit.
>
> * * *
>
> Defendant reports that plaintiff never requested the full amounts of the bond claims below, and we note that plaintiff does not suggest otherwise on appeal. . . . [I]t is not clear whether the trial court's decision to rely on its own empirical sense of fairness in this instance, rather than an injured party's duty to mitigate damages, or a court's duty to adjust awards of damages to reflect successful such mitigation, resulted from its decision to eschew contract law in favor of the doctrine of unjust enrichment. Regardless, we conclude that the court erred in awarding plaintiff back charges in connection with bond claims in amounts greater that what plaintiff actually paid. [*Draeger I*, p 9.]

In its earlier judgment, the trial court noted that the "bond claims presented by creditors . . . amounted to $158,465 reduced and compromised through the efforts of counsel for plaintiff to $79,500." The court then calculated "amounts paid by [plaintiff] for AIC's benefit or to its creditors" as $446,424, which included $158,465 as the "gross amount owed by AIC to those creditors who submitted bond claims," which the court set forth with a parenthetical stating that defendant "should not benefit from plaintiff's successful efforts to compromise amounts claimed to be owed."

In calculating damages on remand, the trial court declared itself "comfortable with the figure for back charges it set forth in its original opinion, i.e. $446,424," thus indicating that it was adopting its earlier calculation, which itself did not take into account plaintiff's having bargained $158,465 in claims down to $79,500, and this time separately included an "adjustment . . . for bond claims paid by [plaintiff], $79,500." The trial court thus not only repeated the error this Court earlier identified of awarding plaintiff back charges reflecting the total original bond claims, $158,465, instead of the lesser figure plaintiff actually paid, $79,500, but compounded the error by awarding what plaintiff actually paid in addition to the total originally claimed.

In response to this Court's instructions on remand, the trial court should have awarded only the $79,500 actually paid instead of the $158,465 originally claimed. Having now in fact awarded both, the court erred in the amount of $158,465. Accordingly, we vacate that portion of the judgment below, and remand this case to the trial court with instructions to reduce the judgment by $158,465.

## III. REASSIGNMENT ON REMAND

"A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). In determining whether a case should be reassigned to a new judge to hear proceedings on remand, this Court considers whether the original judge should be expected to have substantial difficulty setting aside earlier views, whether reassignment is needed to preserve the appearance of justice, and whether the waste and duplication resulting from reassignment would outweigh any benefit to the preservation of the appearance of fairness. *In re Foster Attorney Fees*, 317 Mich App 372, 379; 894 NW2d 718 (2016).

In this case, our reading of the opinions and orders of the judge below in response to this Court's remand does not suggest any disdain for this Court's judgment, or begrudging of the need to conform further proceedings to this Court's instructions. Although the judge again erred in how he factored bond claims into the calculation of back charges, we see no basis for ascribing the error to anything beyond mere inadvertence. Further, proceedings on remand involve only a specific adjustment in the judgment amount. For these reasons, we decline to order that proceedings on remand take place before a different jurist.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto

-8-