# STATE OF MICHIGAN

# COURT OF APPEALS

---

LASHAWN D. REDMOND,

      Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellee.

UNPUBLISHED
December 2, 2014

Nos. 313413 & 315416
Wayne Circuit Court
LC No. 10-011348-AV

---

Before: MURRAY, P.J., and JANSEN and SHAPIRO, JJ.

SHAPIRO, J. (*concurring*).

I concur with the majority's conclusion because we are bound by this Court's decision in *Moody v Home Owners Ins Co*, 304 Mich App 415; 849 NW2d 31 (2014). MCR 7.215(J)(1). I write separately because I believe that *Moody* was incorrectly decided. Its reasoning is flawed and the radical and wholesale changes it imposes on well-settled rules of practice are confusing and impracticable. But for the fact that the Michigan Supreme Court has granted the *Moody* plaintiffs' application for leave to appeal, at least in respect to the issues discussed herein, *Moody v Home Owners Ins Co*, ___ Mich ___; 853 NW2d 331 (2014), I would request a special conflict panel of this Court to resolve the issue. MCR 7.215(J)(2).

The *Moody* panel addressed the issue of the subject-matter jurisdiction "of the district court under MCL 600.8301 when a plaintiff presents evidence and argument of damages far in excess of the district court's amount-in-controversy jurisdictional limit." *Moody*, 304 Mich App at 419. Two consolidated cases with similar facts were decided in *Moody*. Both plaintiffs brought claims under the no-fault act, MCL 500.3101 *et seq*., and requested damages not exceeding $25,000. *Id.* at 420-426. Both cases proceeded to trial and both plaintiffs received jury verdicts in excess of $25,000. *Id.* The respective district courts subsequently reduced both awards to $25,000. *Id.* The same circuit judge heard appeals from both defendants and vacated both judgments, finding that the district courts had not possessed subject-matter jurisdiction over either case. *Id.* at 423-426. The *Moody* panel affirmed the circuit judge's orders. *Id.* at 438.

## I. STATUTORY INTERPRETATION

The *Moody* panel was tasked with interpreting MCL 600.8301(1), which provides that, "The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." "Amount in controversy" is not defined in the statute, but is

-1-

plainly a legal term of art.[1]  Indeed, the *Moody* panel cited the legal definition of "amount in controversy" provided by Black's Law Dictionary: "[t]he damages *claimed* or *relief demanded* by the injured party to a lawsuit."  *Id.* at 430, citing Black's Law Dictionary (9th ed) (emphasis added).  This is a perfectly adequate and understandable definition of "amount in controversy."  It is a legal term of art that means "the damages claimed or relief demanded."  Nevertheless, the *Moody* panel then divorced the word "controversy" from the rest of the term of art and turned to legal and lay dictionary definitions of this isolated word.  Doing so violated the fundamental rule that "[c]ontextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: '[i]t is known from its associates,' see Black's Law Dictionary (6th ed.), p. 1060.[]  This doctrine stands for the principle that a word or phrase is given meaning by its context or setting."[2]  *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 318; 645 NW2d 34 (2002) (quotation marks and citations omitted).  It was also inconsistent with the statutory interpretation canon of favoring the specific over the general, i.e., *generalia specialibus non derogant* ("the general does not detract from the specific").  See, e.g., *Craig v Detroit Pub Schs Chief Executive Officer*, 265 Mich App 572, 575; 697 NW2d 529 (2005).  In the underlying *Moody* cases, both plaintiffs claimed and demanded relief not in excess of $25,000 and so the "amount in controversy" was not more than $25,000.

Ultimately, it is the potential relief and not the evidence that limits the district court's jurisdiction.  And, it is beyond peradventure that a civil jury verdict is not itself enforceable.  No party may use it to compel payment from another.  Only the judgment entered by the district court has the power of law and may be enforced.  There are many settings in which a jury's verdict is modified by the court prior to entry of judgment.  A court may order remittitur, additur, setoffs due to collateral sources, reductions for comparative and third-party fault, and many other potential modifications defined by an applicable statute or rule.

## II.  REJECTION OF APPLICABLE CASE LAW

The *Moody* panel rejected out of hand decades of Michigan caselaw that provided an adequate, simple, and fair manner of determining the "amount in controversy" at the outset of district court proceedings.[3]  Curiously, as follows, *Moody* made note of these cases but then ignored them:

---

[1] The legal concept behind the phrase "amount in controversy," i.e., the federal "matter in controversy" concept, has been a legal term of art since at least September 24, 1789, when President Washington signed into law the Judiciary Act of 1789.

[2] Our Supreme Court has specifically rejected the approach of using lay dictionaries to separately define words that together make up a term of art.  *Macomb Co v AFSCME Council 25*, 494 Mich 65, 86 n 59; 833 NW2d 225 (2013).

[3] The *Moody* panel also summarily dismissed any caselaw and theory concerning the $75,000 matter-in-controversy requirement of federal diversity jurisdiction cases.  *Moody*, 304 Mich App at 434.  While we are not bound by the opinions of lower federal courts, "their analyses and conclusions [may be] persuasive."  *Abela v General Motors Corp*, 469 Mich 603, 606-607; 677

[A]ppellants cite several case for the proposition that subject-matter jurisdiction is determined only by the allegations in the plaintiff's complaint and prayer for relief. See *Fox v Martin*, 287 Mich 147, 151; 283 NW 9 (1938) ("Jurisdiction does not depend upon the facts, but upon the allegations."); *Zimmerman v Miller*, 206 Mich 599, 604-605; 173 NW 364 (1919); *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 586; 644 NW2d 54 (2002) ("'A court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint.'"), quoting *Grubb Creek Action Comm v Shiawasee Co Drain Comm'r*, 218 Mich App 665, 668; 554 NW2d 612 (1996); and *Altman*, 197 Mich App at 472 ("Jurisdiction always depends on the allegations and never upon the facts."). [*Moody*, 304 Mich App at 431.]

Indeed, less than six months before *Moody* was decided, this Court again clarified that "subject-matter jurisdiction is established by the *pleadings* and exists 'when the proceeding is of a class the court is authorized to adjudicate and the claim stated in the complaint in not clearly frivolous.'" *Clohset v No Name Corp*, 302 Mich App 550, 561; 840 NW2d 375 (2013), quoting *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993) (emphasis in *Clohset*). All these cases have established the bright-line rule that subject-matter jurisdiction is determined by reference to the parties' pleadings. Nonetheless, the *Moody* panel rejected this long line of cases with no explanation other than its conclusory remark that "[n]one of these cases is factually similar to the ones at hand[.]" *Moody*, 304 Mich App at 431. However, all cases present differing factual situations. The question is whether those differences mandate a different analysis or result and if so, why they do.

Here, the factual distinctions do not suggest, let alone require, that the holdings of these cases be ignored. For example, in the recent case *Brooks v Mamo*, 254 Mich App 486, 488; 657 NW2d 793 (2002), the jury returned a verdict for the plaintiff for $50,000 after a district court trial. The district court entered a judgment for $17,985, which reflected the $10,000 amount-in-controversy limitation in effect at the time, plus costs and interest. *Id*. While postjudgment motions were pending, the Legislature modified MCL 600.8301 to increase the district court amount-in-controversy limitation to $25,000. *Id*. at 490. This Court reversed the decision of the circuit court and held that the plaintiff was entitled to a $25,000 judgment, the new maximum jurisdiction of the district court. *Id*. at 492-497. *Brooks* did involve a unique factual scenario, in that the relevant statute was amended during the course of the underlying action. However, *Brooks* clearly stands for the proposition that evidence presented to support damages in excess of the district court's limitation does not void a judgment that is within that limitation. The *Brooks* plaintiff presented evidence of damages far in excess of both the $10,000 and $25,000

NW2d 325 (2004). Much like our district courts, federal courts are those of limited jurisdiction. See *Kokkonen v Guardian Life Ins Co of America*, 511 US 375, 376; 114 S Ct 1673; 128 L Ed 2d 391 (1994). An element of federal diversity jurisdiction is a "matter in controversy" exceeding $75,000. 28 USC 1332(a). The longstanding federal rule provides that "if, *from the face of the pleadings*, it is apparent, to a *legal certainty*, that the plaintiff cannot recover the amount claimed of[,]" the suit should be dismissed. *St Paul Mercury Indemnity Co v Red Cab Co*, 303 US 283, 289; 58 S Ct 586; 82 L Ed 845 (1938) (emphasis added). Applied to *Moody*, from the face of the pleadings, it was legally certain that the plaintiffs could not recover in excess of $25,000.

limitations, as evidenced by the jury's $50,000 award. The *Moody* panel appears to place great weight on the fact that the *Brooks* defendant did not raise a subject-matter jurisdiction argument identical to that of the *Moody* defendants. However, this reliance is contrary to *Moody*'s later belabored point that subject-matter jurisdiction claims are never waived and that *all* courts, including the Court of Appeals, have a duty to sua sponte question subject-matter jurisdiction if the evidence presented appears to support damages in excess of the jurisdictional amount. See, e.g., *Clohset*, 302 Mich App at 560. Indeed, as *Moody* points out, a judgment rendered by a court without subject-matter jurisdiction is void; thus, according to *Moody*, this Court in *Brooks* should have found the underlying judgments void and declined to engage in any analysis regarding the retroactivity of the jurisdictional statute or the other issues presented. Notably, *Moody* did not overrule *Brooks* nor did it request a special conflict panel pursuant to MCR 7.215(J)(2).

### III. MISDIRECTION OF THE BENCH AND BAR

Putting aside its analytical shortcomings, the *Moody* decision suffers from a more serious defect: it upends settled practice without defining any clear new rules of practice. It tells the bench and bar what it is doing wrong, but provides no direction as to how they are to do it right. This is a formula for confusion, inconsistency, and the wasting of judicial resources.

First, *Moody* provides no guidance as to when the amount-in-controversy determination is to be made.[4] *Moody* rejects the longstanding proposition that the determination be made at the beginning of the litigation, i.e., based on the pleadings. However, it offers no reasonable alternative. Indeed, it appears that the determination can only be made for certain *after* the trial is concluded. Having subject-matter jurisdiction remain at issue until trial ends is a bizarre arrangement. It places an unnecessary burden on the parties and the courts, and undercuts the very validity of district court judgments.

Second, *Moody* will likely result in a game of jurisdictional ping-pong that will unnecessarily drain Michigan's limited judicial resources. Take for example a plaintiff-landlord who claims he is owed $24,000 in rent by a defendant-tenant. The landlord is required to file suit in district court since that court has *exclusive* jurisdiction over cases under $25,000. However, by the time of trial, the outstanding rents may have risen to $26,000, at which point the landlord must remove the case to circuit court or risk dismissal after trial. Once he has done that, however, the tenant may choose to pay $2,000 of the past rent, thus making the case again one that falls solely within the jurisdiction of the district court. The same is true in a no-fault personal protection insurance (PIP) case. What shall a plaintiff do when at the time of filing she has incurred $15,000 in unreimbursed expenses but anticipates that the amount of damages will likely grow to $30,000 by the time of trial? These situations generated by *Moody* are completely unnecessary and will result in protracted litigation, gamesmanship, and congestion of trial court dockets.

---

[4] It should be noted that there is nothing in *Moody* to suggest that its application is limited to no-fault actions. *Moody* applies to all district court actions.

Third, *Moody* never states exactly what amount of damages placed in evidence will trigger all these duties. *Moody* notes that its plaintiffs submitted evidence of damages "far in excess" of the jurisdictional limit. What is "far in excess"? At what point must a plaintiff transfer his case to circuit court in order to avoid dismissal after trial in the district court: $26,000?, $27,000?, $30,000? What if a witness testifies as to damages at trial that a plaintiff's attorney was not aware of and tips the amount past whatever the trial court subjectively concludes is "far in excess" of the $25,000 limit? The "far in excess" standard is a moving target, varying from judge to judge and case to case. Yet, to run afoul of this moving target poses potentially catastrophic consequences.

Fourth, it is quite possible, particularly in cases with noneconomic damages, that a jury might award a plaintiff more than his requested damages. If a plaintiff sought $23,000 in damages, but the jury awarded $30,000, under *Moody*, the jury's verdict and judgment would be void, despite the parties and court having engaged in a full and fair trial in all other respects. One can also easily imagine a situation where a plaintiff must decline to present relevant and important evidence for fear that the court or the defendant will argue that the amount-in-controversy has suddenly exceeded $25,000 and the case must, therefore, be dismissed.

Fifth, there are specific damage statutes to be considered. Take for example a plaintiff who alleges that a defendant violated MCL 600.2919 by illegally removing timber from the plaintiff's land. At trial before the district court, the parties dispute the value of the timber removed, but agree that it was between $8,000 and $10,000. However, MCL 600.2919(1) provides that a plaintiff is entitled to treble damages for the illegal removal of the timber. Under *Moody*, it would seem that "the amount the parties to a lawsuit dispute, argue about, or debate during the litigation[,]" *Moody*, 304 Mich App at 429-430, was between $8,000 and $10,000, and thus within the jurisdictional amount-in-controversy limit. However, *Moody* can reasonably be read to include the entire possible award in its amount-in-controversy requirement. Moreover, it can be assumed that our hypothetical defendant would argue that he was not subject to the statutory trebling provision and, thus, the trebled amount was "disputed" during the litigation. If plaintiff proves that the timber was worth $8,334 or more, he would be entitled to over $25,000 in damages and the district court would be charged with violating either MCL 600.2919(1) or *Moody*. This problem could not be resolved by removal to the circuit court, because if the plaintiff only managed to prove $8,000 in actual damages, his treble damages would not exceed $25,000, and under *Moody*'s reading of the jurisdictional statutes, as discussed above, the circuit court would also be without jurisdiction. Indeed, in this example, it would be impossible to determine whether the district or circuit court possessed subject-matter jurisdiction over the plaintiff's suit until after the verdicts were determined and damages awarded. Such a procedure cannot be allowed to stand. See *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998) ("Statutes should be construed so as to prevent absurd results . . . .").

These are some, but almost certainly not all, of the practical problems that will be posed by *Moody*'s application in our trial courts.

## IV. CONCERNS OVER "FORUM SHOPPING"

It is fair to ask what motivated the *Moody* panel to upend settled legal practice. It appears to me that the *Moody* panel's decision was motivated by the plaintiff's apparent attempt to have

his cake and eat it to, i.e., to have his case heard in the forum he chose, i.e., district court, while still submitting the evidence of damages beyond $25,000.

The initial response to that concern must be that plaintiff was not getting his cake and eating it too. He was getting only a portion of that cake, i.e., his damages were capped at $25,000 no matter the evidence presented. In other words, even assuming that making such a trade-off in order to file in the most favorable forum is to be frowned upon,[5] the *Moody* plaintiffs paid for the right to be heard in district court. Both juries awarded the respective plaintiffs more than $25,000, yet the plaintiffs conceded that the court had to reduce those awards to $25,000. Presumably, many defendants would be content to accept a plaintiff's voluntary cap on his damages. In any event, the *Moody* panel's disdain for the litigation strategy of a particular attorney belongs in the realm of professional sanctions, not in the imposition of ill-defined rules that apply to every case filed. The *Moody* panel's dissatisfaction with the parties' counsel did not support disrupting Michigan's entire civil trial system. See *Apsey v Memorial Hosp*, 477 Mich 120, 141; 730 NW2d 695 (2007) (YOUNG, J., concurring in result only) (Although legislative clarification may be desirable, Court should "favor a resolution that is least unsettling and disruptive to the rule of law in Michigan[.]").

The pre-*Moody* rule for practice in our district courts was longstanding, widely accepted, and simple. A party who brought suit was required to claim damages exceeding or not exceeding $25,000 and file in the appropriate court. Evidence was presented, verdicts were rendered, and damages awarded. If those damages exceeded $25,000, the district judge simply lowered the award to $25,000. This rule was perfectly sustainable, well-known to attorneys, functioned for decades, and, as discussed, was not inconsistent with the law. "This is the essence of the rule of law: to know in advance what the rules of society are." *Robinson v Detroit*, 462 Mich 439, 467; 613 NW2d 307 (2000). Post-*Moody*, both the parties and trial judges will be unclear as to what the rules are at most points during the litigation and, indeed, often not until after damages have been assessed. This is an impractical, needlessly complicated, and legally unsupported outcome.

## V. CONCLUSION

For the reasons discussed above, I conclude that *Moody* was wrongly decided on both legal and practical grounds and should be overruled. Pursuant to MCR 7.215(J)(1), I must follow *Moody* despite my disagreement with it. This would normally lead me to request a special conflict panel pursuant to MCR 7.215(J)(2). However, because the Supreme Court has granted leave to appeal in *Moody*, I believe such a request would be inappropriate.

/s/ Douglas B. Shapiro

---

[5] Presumably, attempting to obtain the most favorable forum for a client's case could be considered part of an attorney's duty to zealously represent his client. However, that ethical debate is not at issue here.